Allen CADE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 01–CF–1309, 05–CO–124.

District of Columbia Court of Appeals.

Argued Feb. 14, 2006.

Decided Feb. 27, 2006.*

---

\* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published, with minor modifications, at the request of the appellee.

Jonathan H. Siegelbaum, with whom David S. Cohen, Washington, DC, was on the brief, for appellant.

John P. Gidez, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and David B. Goodhand and James S. Sweeney, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and KRAMER, Associate Judges, and PRYOR, Senior Judge.

KRAMER, Associate Judge:

This appeal challenges the appellant's convictions for conspiracy to commit armed robbery, armed robbery, armed carjacking, kidnapping while armed, possession of a firearm during a crime of violence and carrying a pistol without a license. The appellant seeks reversal of these convictions on the grounds that the trial court erred in finding that his videotaped statement to the police was admissible at trial. He also argues that the trial court erred in denying without a hearing his post-conviction motion alleging ineffective assistance of his trial counsel pursuant to *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). We affirm.

## I.

The appellant in this case and his two co-conspirators, Gene Downing and Robert Moody, were indicted on March 20, 2001, for conspiracy to commit armed robbery, armed robbery, armed carjacking, armed kidnapping, first degree murder while armed, felony murder while armed (three counts), possession of a firearm during a crime of violence, and carrying a pistol without a license. The events underlying these charges occurred on May 5, 2000. On that date, the appellant, his two co-conspirators, and a fourth man, Leon Butler, who was charged separately, traveled from the Southeast quadrant of the District of Columbia to the Northwest quadrant in search of someone to rob. The appellant brought a gun for this endeavor. At around 11:45 p.m., the four men spotted the victim, 55–year old Vidalina Semino, walking to her car after finishing her shift as a waitress at a nearby hotel. The appellant and Butler approached Ms. Semino. Butler, who had obtained the gun from the appellant, pushed her to the ground, took her purse and car keys, forced her into the back seat of her car and then pulled around the corner to pick up Downing and Moody.

With the appellant driving, the four drove around for over an hour, at one point getting Ms. Semino out of the passenger compartment of her car and stuffing her into the trunk. Eventually they returned to the Southeast quadrant, and the appellant parked in a wooded area near 22nd and T Streets. There, Ms. Semino was pulled from the trunk and forced to give up the PIN number to her ATM card. The four defendants debated about whether or not they should kill Ms. Semino, since she had seen their faces and might, if left alive, be able to identify them. The group began walking toward the wooded area. Ms. Semino, who had been pleading for her life, began running. Butler chased and brought her back, whereupon Moody shot her twice in the chest, causing her death. Subsequent to the murder, the decedent's credit card and ATM card were used several times, which helped lead authorities to the appellant and the three other men involved in this crime.

Some months later, Gene Downing and the appellant were informed that detectives at the D.C. Metropolitan Police Department were interested in speaking with them. They agreed to do so and went together to police headquarters. Detective Reed, the lead detective on the case, interviewed Downing and arranged for the appellant to wait in an outer office with a couch and television that was also used by detectives and officers. During her questioning of Downing, Detective Reed garnered enough information about the appellant's involvement in Ms. Semino's death to arrest him on probable cause for the crimes committed against her. Detective Reed, who was still speaking with Downing, turned that responsibility over to her partner, Detective Jeffrey Mayberry, who placed the appellant under arrest and informed him of his *Miranda*[1] rights. The appellant executed a Police Department PD–47 form, waiving his right to remain silent and to have counsel present during the questioning, and agreed to provide a videotaped statement. In that statement, the appellant implicated himself in most of the crimes against Ms. Semino, but maintained that he had not wanted to kill her and in fact had urged the others not to do so.

Butler and Moody separately pleaded guilty to charges stemming from Ms. Semino's robbery, kidnapping, and murder.

---

1. *See generally Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The appellant and Downing, however, went to trial on the charges and were tried together as co-defendants. During pre-trial proceedings, the appellant's defense counsel filed a motion to suppress the videotaped police statement, claiming that he had invoked his right to counsel prior to speaking with Detective Mayberry, which rendered the statement inadmissible under *Miranda* principles.

At the hearing on this motion, the appellant testified that while waiting for Downing, he had told an unidentified detective at the station (neither Reed nor Mayberry) that he wished to call the attorney who was representing him in an unrelated case, but that he had not been provided with the opportunity to do so. Detectives Reed and Mayberry testified that the appellant had never made a request of either of them to speak to counsel, nor had they been made aware that he had made such a request of any other law enforcement officer. No other detective was called to testify at the hearing.

After recessing to view the videotape, the trial court found that the appellant's testimony that he had invoked his right to counsel was not credible. This conclusion was based on a number of factors that the trial court articulated. The judge noted that the appellant had voluntarily gone to the police station. Moreover, the unknown officer or detective to whom he had allegedly told that he wished to invoke his right to counsel was not, by the appellant's own admission, even involved with this case. In addition, the judge noted, the appellant admitted that when he met with Detective Mayberry, who advised him of his rights before asking him any questions, he did not hesitate to waive those rights on the PD–47. The court reasoned that if

he had indeed invoked his right to counsel to an unnamed police detective, the logical point to reiterate that he had invoked his right to counsel would have been shortly thereafter, when Detective Mayberry was advising him of the rights he gave up by agreeing to answer questions. Further, the trial court noted, the appellant waived his rights yet again on the videotape. Indeed, the videotape itself provided the trial court with an opportunity to view the appellant's demeanor at a time not long after the time when he allegedly had invoked his right to counsel, and the trial court took that into account at the time of the ruling. Having considered all of these factors, the court found the appellant's assertion that he had invoked his right to counsel was not credible and ruled that the videotape was admissible.

At trial, the appellant's counsel conceded in his opening statement that the appellant was guilty of conspiracy, armed robbery, armed kidnapping and armed carjacking because he had admittedly participated in those crimes against the decedent.[2] On the other hand, counsel asserted that the appellant was not guilty of the murder charges and in fact had attempted to dissuade his co-conspirators from killing Ms. Semino. Moreover, he pointed out that the appellant had voluntarily gone to the police station and spoken with Detective Mayberry, admitting his participation in the robbery, kidnapping and carjacking. At that time, as counsel indicated, the appellant told Detective Mayberry that he had not wanted any part in the killing of Ms. Semino and had tried to talk the others out of killing her. He also had identified Robert Moody and Leon Butler as the ones who had been responsible for killing

---

**2.** Counsel did not specifically concede the weapons charges, though they were inextrica-

bly linked to the conceded charges.

her.[3] In addition, appellant's counsel warned the jury to pay particular attention to the testimony of Butler, who had pleaded guilty to second degree murder while armed and armed kidnapping on the promise (1) that all other charges would be dropped if he agreed to testify against the appellant, and (2) that his cooperation with the government would be brought to the attention of the court at the time of his sentencing. This meant, counsel argued, that Butler necessarily had an interest in currying favor with the government through his testimony so that the government would speak favorably about his cooperation to the judge who would sentence him.

The government's evidence at trial included the appellant's videotaped confession, the testimony of the cooperating codefendant, Butler, who described the appellant's role in the offenses of the evening that Ms. Semino was murdered, the testimony of a friend of the appellant to whom he had confessed, and other less central witnesses who corroborated the appellant's involvement in the crimes. The appellant testified in his own defense, adamantly denying his involvement with the murder, while conceding his guilt on all of the other charges.

Defense counsel's closing argument focused on the evidence and reasons why the appellant was not guilty of the murder charges. Ultimately, the jury convicted the appellant of conspiracy to commit armed robbery, armed robbery, armed carjacking, armed kidnapping, possession of a firearm during a crime of violence and carrying a pistol without a license. It was unable, however, to reach a verdict on the first degree murder or felony murder charges. Two months later, the appellant

pleaded guilty to second-degree murder while armed and was sentenced to an aggregate term of 35 years, to life imprisonment on all of the charges.

Thereafter, the appellant filed a post-conviction motion to vacate his sentence pursuant to D.C.Code § 23–110 (2001), claiming that his trial counsel had not consulted him before conceding his guilt on the non-homicide charges before the jury and that the appellant had never given him permission to do so. On that basis, the appellant asserted that all of his convictions except the second degree murder while armed charge should be reversed on the grounds that his counsel had been ineffective. Without holding a hearing, the court denied the motion in a written order, finding that counsel's strategy was not ineffective under the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## II.

### A.

With respect to the trial court's denial of his motion to suppress the appellant's videotaped statement, our "scope of review ... is limited," *Griffin v. United States,* 850 A.2d 313, 315 (D.C.2004) (citing *Harris v. United States,* 738 A.2d 269, 274 (D.C.1999)). "We view the evidence in the light most favorable to the prevailing party," and must draw "all reasonable inferences therefrom ... in favor of sustaining the trial court ruling." *Castellon v. United States,* 864 A.2d 141, 148 (D.C.2004) (citing *Gatlin v. United States,* 833 A.2d 995, 1005 (D.C.2003)). Legal determinations made in the course of ruling on a motion to suppress are reviewed *de novo,* but we will only reverse a trial court's

---

**3.** In his videotaped statement to police, the appellant identified the fourth man involved in the crime as "Leon's cousin" but, later, in his trial testimony, specifically named Moody as the fourth man.

credibility determination on appeal if it is found to be clearly erroneous. *See Stroman v. United States,* 878 A.2d 1241, 1244 (D.C.2005) (citing *Hill v. United States,* 664 A.2d 347, 353 n. 10 (D.C.1995), *cert. denied,* 516 U.S. 1065, 116 S.Ct. 749, 133 L.Ed.2d 697 (1996)).

In ruling on the appellant's motion to suppress, the trial court explicitly discredited the appellant's testimony, finding that in the circumstances here, it was unbelievable that he had adamantly invoked his right to counsel and then, shortly thereafter, affirmatively waived that same right on the PD–47 form and then again on the videotape. This finding is not contrary to the evidence and does not improperly apply the law. Nor do we read the record to indicate that the trial court found that the appellant's invocation of counsel was immaterial because he later waived it, as the appellant has suggested. Instead, it is clear that the court looked at all of the evidence available to it, including the appellant's testimony and his videotaped statement, which displayed his demeanor shortly after he claimed to have asserted his right to counsel, and made a reasonable credibility determination therefrom with respect to whether the appellant had in fact invoked his right to counsel. We therefore find no reason to overturn the trial court's credibility determination and accordingly affirm the denial of the appellant's motion to suppress.

## B.

 We also find without merit the appellant's argument that the trial court erred in denying his § 23–110 motion without holding a hearing. While there is a presumption that the trial court should hold a hearing prior to deciding a § 23–110

motion, *see Ginyard v. United States,* 816 A.2d 21, 37 (D.C.2003) (citing *Ready v. United States,* 620 A.2d 233, 234 (D.C. 1993)), *cert. denied,* 538 U.S. 1066, 123 S.Ct. 2237, 155 L.Ed.2d 1123 (2003), no hearing is required where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief," D.C.Code § 23–110(c) (2001), or "where defendant's motion consists of (1) vague and conclusory allegations, (2) palpably incredible claims, or (3) allegations that would merit no relief even if true." *Metts v. United States,* 877 A.2d 113, 119 (D.C.2005) (citing *Lopez v. United States,* 801 A.2d 39, 42 (D.C.2002)). We review the denial of a § 23–110 motion for abuse of discretion. *Id.* at 119 (citing *(Rhasaan) Alston v. United States,* 838 A.2d 320, 324 (D.C.2003)). This court will "uphold the denial of a § 23–110 motion without a hearing [only if] satisfied that 'under no circumstances could the petitioner establish facts warranting relief.'" *Lanton v. United States,* 779 A.2d 895, 900 (D.C. 2001) (citing *Ramsey v. United States,* 569 A.2d 142, 147 (D.C.1990)).

In filing his § 23–110 motion in the trial court, the appellant argued that his counsel was *per se* ineffective for conceding his guilt at trial under the principles set out in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), as opposed to the more widely applicable test established by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In denying the motion without a hearing, the trial court applied *Strickland* and found that counsel's performance was not deficient because the concession of guilt as to the non-homicide charges was a reasonable trial strategy in light of the strong evidence against the appellant.[4] In

---

4. Even though the appellant has not claimed ineffective assistance of counsel under *Strickland, supra,* his ineffectiveness claim could

likely be upheld under that standard as well. Several jurisdictions have recognized that a concession of guilt at trial by defense counsel

any event, the court found, the appellant was clearly aware of this strategy before trial as a result of statements made by his counsel in his presence in open court and actually participated in this strategy by testifying and admitting to the non-homicide crimes during the course of the trial.

 The appellant now argues that the trial court erred in applying the *Strickland* test, reasserting on appeal that counsel's deficiencies meet the higher standard for a claim of ineffective assistance of counsel set out in *Cronic, supra. Cronic* held that "when surrounding circumstances justify a presumption of ineffectiveness ... a Sixth Amendment claim [may] be sufficient without inquiry into counsel's actual performance at trial." 466 U.S. at 662, 104 S.Ct. 2039. *Cronic* applies in those cases where counsel not only "made specific errors in the course of representation"—where *Strickland* would apply[5]—but also provided such inadequate representation overall that the defendant "was—either actually or constructively—

denied the assistance of counsel altogether." *Roe v. Flores–Ortega,* 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). Specifically, "the attorney's failure must be complete," and the *Cronic* standard can only be met "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Bell v. Cone,* 535 U.S. 685, 697, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quoting *Cronic, supra,* 466 U.S. at 659, 104 S.Ct. 2039) (emphasis in original) (internal quotations omitted).

We have recognized that *Cronic* should be applied sparingly and only in exceptional circumstances. *Yancey v. United States,* 755 A.2d 421, 428 (D.C.2000). This is not such a case. The record here indicates that trial counsel was deeply engaged in the representation of his client: he filed pretrial motions to suppress the videotaped statement and other crimes evidence; he actively argued these issues at hearings before the court; he vigorously cross-examined the government's wit-

may be a reasonable strategy in certain circumstances and therefore may not constitute deficient performance. *See, e.g., United States v. Gomes,* 177 F.3d 76, 83 (1st Cir.1999) ("Counsel's concession [of guilt as to one charge] was a calculated gamble.... Counsel argued vigorously in favor of acquittal on the other counts, using the contrast in [appellant]'s favor.... This was patently a reasonable strategy."); *Bell v. Evatt,* 72 F.3d 421, 429 (4th Cir.1995) ("We have previously distinguished statements that amount to mere tactical retreats from those that parlay a complete surrender. Some remarks of complete concession may constitute ineffective assistance of counsel, but tactical retreats may be reasonable and necessary within the context of the entire trial, particularly when there is overwhelming evidence of the defendant's guilt."), *cert. denied,* 518 U.S. 1009, 116 S.Ct. 2533, 135 L.Ed.2d 1056 (1996); *Commonwealth v. Cousin,* 888 A.2d 710, 716–717 (Pa. 2005) ("[T]his Court has determined that, under some circumstances, admitting obvious guilt can constitute effective assistance.").

*See also Richardson v. United States,* 698 A.2d 442, 444–445 (D.C.1997) (finding that defense counsel had only conceded the *actus reus* element of the charged crime at trial and not the requisite *mens rea,* which did not amount to a complete concession of guilt, but also recognizing that several federal courts have found concessions of guilt by counsel to be reasonable trial strategy). As the trial court found, counsel's concession of guilt in this case could be considered sound trial strategy, given the strength of the evidence against the appellant on the conceded charges, therefore rendering counsel's performance effective. *See Strickland, supra,* 466 U.S. at 689, 104 S.Ct. 2052 (recognizing "the wide latitude counsel must have in making tactical decisions.")

5. In order to prevail on a claim for ineffective assistance of counsel under *Strickland,* a claimant "must show that counsel's performance was deficient .... [and] that the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. 2052.

nesses at trial, including extensive questioning of Butler, the cooperating witness; and finally, he gave a forceful closing argument on the appellant's behalf. The result of counsel's efforts was that, despite the strong evidence against the appellant, the jury was unable to reach a verdict on the homicide charges. This representation bears no resemblance to a complete denial of the right to counsel that would result in the · government's case having not been subject to meaningful adversarial testing. Since the appellant cannot meet the *Cronic* standard, and since we agree with the trial judge that has made out no claim of deficient performance under *Strickland*, he is entitled to no relief on his § 23–110 claim. Accordingly, for the reasons stated herein, the appellant's convictions are hereby

*Affirmed.*