Marlon SHIELDS, Appellant,

v.

UNITED STATES, Appellee.

No. 03–CF–1318.

District of Columbia Court of Appeals.

Argued May 19, 2006.

Decided Feb. 1, 2007.

J. Christopher McKee, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and Roy W. McLeese III, and Alexander Shoaibi, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, and RUIZ, Associate Judge, and KING, Senior Judge.

KING, Senior Judge:

Marlon Shields was convicted of two counts of assault with a dangerous weapon and several other weapons-related offenses arising out of a property dispute. On appeal, he contends that the manner in which the trial judge directed defense counsel to exercise his peremptory challenges was flawed, frustrating his right to a "meaningful exercise of his peremptory challenges." Shields further contends that defense counsel was ineffective because he failed to avail himself of the remedies offered by the trial court to correct any perceived flaws with the jury selection process and because counsel failed to consult with him before exercising peremptory challenges. After oral argument we ordered supplemental briefing, directing the parties to address whether counsel's deficiencies were such that we should presume prejudice, rather than apply the traditional *Strickland v. Washington*[1] analysis. We affirm.

## I.

During the early morning hours of January 30, 2004, Shields, along with his mother, entered a house on Queens Chapel Road, pulled out a gun, and ordered the two occupants of the home to leave. The two men complied, and one of them, Steager, immediately flagged down a nearby police officer who was patrolling the area. The responding officer found Shields, who appeared "angry," pacing in front of the house where the offense took place. After repeated requests by the officer, Shields eventually surrendered the weapon and he was then arrested.

Following his arrest, Shields gave a statement to police, which was admitted into evidence at trial. In this statement, he explained that he had gone to the house on Queens Chapel Road on his mother's behalf to reestablish control of that property. He admitted that his mother was not the owner of the house and he conceded that he did not know whether the occupants had permission to live there. He also admitted that he pointed a gun at the two occupants of the house.

A records search revealed that the firearm was not registered, and Shields had

---

1. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

no license to carry it. A crime scene technician testified that the house on Queens Chapel Road was 275 feet from an elementary school.

## II.

Shields was charged with two counts of assault with a dangerous weapon,[2] possession of a firearm during a crime of violence,[3] carrying a pistol without a license within a gun-free school zone,[4] possession of an unregistered firearm,[5] and unlawful possession of ammunition.[6] A jury trial commenced on November 7, 2002. At the start of *voir dire*, the trial court instructed the members of the jury panel to record on an "answer sheet" any "yes" answers to a series of questions read by the court. The court then proceeded to interview each prospective juror at the bench, not just those who answered questions affirmatively. Shields indicated that he did not wish to be present at the bench during the individual interviews, and remained at counsel table. During *voir dire*, eighteen prospective jurors were excused for cause.

At the conclusion of *voir dire*, the judge explained to counsel that each side would be allotted ten peremptory strikes, but counsel would record on the strike sheet[7] two challenges at a time until the ninth round, when challenges were to proceed one at a time. The judge then instructed the attorneys to step outside the courtroom to complete the strike sheet while he responded to a jury note in another case. Before exiting the courtroom, defense counsel indicated that he needed time to consult with his client prior to completing the strike sheet. In addition, he expressed doubt about whether he could recall the race and gender of the jurors. The judge responded that counsel should do his best within the allotted time to complete the sheet. The prospective jurors also left the courtroom while the judge was dealing with the other matter.

After the trial judge concluded the other matter, both counsel and the jury panel returned to the courtroom. At that point the attorneys were in the process of recording their peremptory challenges in the "third set of two's." The remaining peremptory challenges were recorded on the strike sheet in the courtroom while the jury panel was present. Defense counsel then objected to the procedure for exercising peremptory challenges, claiming that he did not know the race or gender of several jurors nor did he have sufficient time to discuss the potential challenges with Shields.[8] The judge responded:

I will give you an opportunity right now to discuss anybody you want. They [the

2. In violation of D.C.Code § 22–401 (2001).

3. In violation of D.C.Code § 22–4504(b).

4. In violation of D.C.Code §§ 22–4504(a)(1), –4502.01(a) and (b).

5. In violation of D.C.Code § 7–2502.01.

6. In violation of D.C.Code § 7–2506.01(3).

7. The strike sheet or "Peremptory Challenge Form," which may be found at page ten of the trial court record, contains spaces for both government and defense counsel to indicate the "seat no.," "juror no.," and "race/gender" for each peremptory challenge made. In this case the trial judge required government counsel to record two strikes, followed by defense counsel recording two strikes, and so on until the first eight strikes were recorded. Then government counsel and defense counsel would make alternate single strikes until all of the allowed strikes were made. Each counsel made ten strikes.

8. Although counsel for the government noted his recollection of the race and gender of the jurors he struck on the strike form, defense counsel complained that he had no means to monitor those representations because (1) he was only able to recall the race of two prospective jurors when he completed the strike sheet, and (2) he could not match the names on the sheet with panel members because of the way the panel was seated.

jurors] are out there, you have the sheet, and I will give you the opportunity right now.

Counsel then stated that additional time would not assist his preparation of the strike sheet because he could not identify individual jurors, as they were scattered throughout the courtroom. The judge reminded counsel that the jurors were seated in order, and consequently, counsel should be able to identify individual jurors by their seating arrangement. The judge added:

> If you have any question and you need to do that, I'll ask the person to stand up and give you their jury number. I will give you an opportunity now to correct what you may see as an inadequacy. This is your time to do so.

Government counsel took advantage of the trial court's offer, and revised the strike sheet. Defense counsel, however, declined to re-formulate his portion of the sheet. The courtroom clerk then read aloud the numbers of the twenty juror panel members whose numbers had been recorded on the strike sheet by the prosecutor and defense counsel, and the trial judge excused them all at the same time. Twelve of the fifteen prospective jurors who were remaining were then seated in the jury box. Two prospective alternate jurors were then struck and the sole remaining prospective juror was seated as the alternate juror.

### III.

Shields mounts several challenges to the trial court's procedure for exercising peremptory strikes. He first contends that the trial court's procedure for completing the strike sheet violated Super. Ct.Crim. R. 24(b), arguing that, because the court directed counsel to complete the sheet outside of the courtroom, counsel did not ex-

ercise their peremptory challenges "at the bench" as the rule requires. He also claims that this procedure impaired defense counsel's ability to: (1) make informed decisions regarding the use of the strikes; (2) adequately consult with his client about such decisions; and (3) to protect against *Batson* violations.[9] Additionally, Shields argues, for the first time on appeal, that the trial court's procedure for *exercising* peremptory challenges—two at a time for the first eight rounds of strikes, and then alternating one at a time for the remaining two rounds—also constituted error.

█ We note first that there are few limitations on the manner in which peremptory challenges are exercised. A trial court is entitled to "considerable flexibility in the way it regulates the use of peremptory challenges." *Williams v. United States,* 552 A.2d 510, 512 (D.C.1988). So long as "the accused was [not] denied the full and unrestricted exercise of his right to make peremptory challenges," the trial judge's discretion will not be disturbed on appeal. *Taylor v. United States,* 471 A.2d 999, 1004 (D.C.1983).

█ In *Lyons v. United States,* 683 A.2d 1066, 1071 (D.C.1996) (en banc), we determined that errors relating to the exercise of peremptory challenges were not structural errors because they are not constitutionally mandated. *See Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Thus, preserved claims of error would be reviewed using the harmless error standard. *Johnson v. United States,* 804 A.2d 297, 304 (D.C.2002). Moreover, we have held that in order to demonstrate prejudice, there must be "a showing of actual juror bias." *Sams v. United States,* 721 A.2d 945, 952 (D.C.1998). To discern actual bias, we look to see "whether the error affected the

---

9. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

verdict—not ... whether it affected the composition of the jury." *Id.* at 952 n. 12 (internal quotations omitted). This test is "difficult" to meet. *Id.* at 952.

### A.

Applying these principles to the circumstances here, we turn to the language of the rule that governs the exercise of peremptory challenges. Rule 24(b) states in pertinent part:

> All peremptory challenges shall be made at the bench. . . . If the offense charged is punishable by imprisonment for more than 1 year, each side is entitled to 10 peremptory challenges. . . . The prosecution shall be called upon to make the first peremptory challenge with each side proceeding in turn thereafter.

 We first address the claim that the court erred by requiring that the strikes be made outside the courtroom, rather than "at the bench" as specified in the rule. The phrase "at the bench" may be considered synonymous with outside of the hearing of the jury.[10] In its 1968 recommendations on minimum standards, an ABA project observed that

> [I]t has been recommended that peremptory challenges be conveyed to the court in such a manner as to conceal from the prospective jurors the particular challenges exercised by each party, the reason being that either prosecution or defense may be prejudiced in the minds of other jurors because of the people they eliminated by peremptory challenge.

STANDARDS RELATING TO TRIAL BY JURY § 2.6 cmt. at 78 (1968); *see also Selection of Jurors by Voir Dire Examination and Challenge,* 58 YALE L.J. 638, 644 (1949) ("[P]eremptory challenges by the parties should be conveyed to the court in such a manner as to conceal from the prospective jurors the particular challenges exercised by each party."). Subsection (b) was added to Rule 24 in 1971, which coincided with the implementation of the Court Reorganization Act of 1970. *See* Super. Ct.Crim. R. 24 (1970) (modified in 1971 by providing in paragraph (b) that peremptory challenges be made at the bench). Prior to that time, the applicable rule of the District's Court of General Sessions used the same language found in the Federal Rules of Criminal Procedure, which did not contain the "at the bench" requirement.[11] D.C. Ct. Gen. Sessions Crim. R. 24 (1969). Although there is no legislative history bearing on this point, it appears likely that the "at the bench" provision was adopted to implement the ABA Standards for Criminal Justice recommendation to eliminate the practice under the old rule. The procedure followed by the trial court in this case conformed with that recommendation—the challenges were conveyed to the judge outside of the jury panel's hearing.

Further, we note that only some of the strikes in this case were recorded outside of the courtroom because when the attorneys and the jury panel returned to the courtroom, the attorneys "were on the third set of two's." Thus, perhaps half of the regular strikes and both alternative strikes were made after the attorneys and jurors returned to the courtroom.[12] More-

---

10. Prior to the adoption of the "at the bench" requirement, some trial judges—but by no means all—required counsel, in open court, to announce the number of the juror he or she was striking. That juror would then be excused and the other counsel would announce his or her strike for all to hear, and so on.

11. The current FED.R.CRIM.P. 24 also does not contain an "at the bench" requirement. *See* FED.R.CRIM.P. 24(b).

12. There is nothing in the record to indicate that the strikes made in the courtroom were not, in fact, made at the bench.

over, with respect to those strikes recorded outside of the courtroom, the trial court offered counsel the opportunity to remedy whatever problem counsel was "having with the process of selection." ("I'm ... giving you the opportunity at this point not to do it from the anteroom but to do it in court. I'm giving you an opportunity to change or do whatever you would like to do."). Although the prosecutor did change some of his strikes, counsel for Shields declined that offer. Thus, even though counsel may have begun to record their preferences outside the courtroom, all strikes were effectively "made" inside the courtroom. For all these reasons, we conclude that there was no abuse of discretion on the part of the trial judge regarding the manner that peremptory strikes were recorded, with respect to the "at the bench" requirement.[13]

### B.

■ We next consider Shields's claim that the trial court erred in requiring counsel to exercise their strikes in groups of two. While it may be desirable for counsel to exercise their challenges two at a time because it expedites the exercise of peremptory challenges, and possibly minimizes the likelihood that jurors will deduce which counsel is making the strike, Rule 24(b) nonetheless requires that strikes be exercised one at a time.[14] Thus, the procedure utilized here was not in strict compliance with the rule; however, there was no objection to the procedure on that ground. Therefore, the issue was not preserved. *See Bradley v. United States,* 881 A.2d 640, 646 n. 5 (D.C.2005) (citing *Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967), for the proposition that "[q]uestions not properly raised and preserved [in the trial court] ... will normally be spurned on appeal").

■ Even if the error had been preserved, Shields would not be entitled to relief because there has been no showing of actual bias. Shields contends, however, that juror 11's presence on the panel created the risk of prejudice against him because the juror's step-daughter had been a victim of an armed robbery in Houston.[15] The record, however, demonstrates that juror 11 believed that she could be impartial and put aside her step-daughter's experience when judging this case:

> THE COURT: Can you separate what happened to your step-daughter and decide this case based on the evidence presented and the facts presented here?
>
> THE JUROR: Probably, yeah. Yes.
>
> THE COURT: Now, it requires you just to put that out of your mind. I mean, you have to decide this case based on what happened here.

13. In so holding we reject Shields's claim that the trial court's procedure for exercising peremptory challenges prevented defense counsel from making informed decisions and from consulting with him about whom to strike or that this procedure impeded counsel's ability to protect against *Batson* violations. It is clear from the record that the trial court gave counsel ample opportunity to correct any perceived flaws. Moreover, there is nothing in the record that shows counsel was unable to consult with his client regarding the strikes to be made.

14. Although the rule requires the strikes to be made one at a time, it does not specify when the jurors who have been struck are to be excused. Some judges excuse the jurors immediately after the strikes are recorded. Here, the trial judge waited until all the strikes had been recorded before excusing the jurors who had been struck. That procedure was not challenged below or before us and there is nothing in the rule that would preclude it.

15. Shields makes no connection between the challenged, and admittedly incorrect, two-by-two strike procedure employed by the trial judge and his alleged prejudice, *i.e.,* defense counsel's failure to strike juror 11.

THE JUROR: Uh-huh.

THE COURT: Can you do that?

THE JUROR: I think so, yes.

When the judge asked defense counsel if he would like to question juror 11, he declined. While the juror's responses during *voir dire* were somewhat equivocal, we must assume that counsel had valid reasons for excluding other members of the venire rather than juror 11; counsel exercised all ten peremptory challenges. Moreover, because the trial court invited counsel to revise the strike sheet to remedy any perceived inadequacy with the court's procedure, and defense counsel declined to do so, we again assume that counsel did not believe juror 11's presence on the panel would be any more harmful to the defense than the ten prospective jurors actually struck. We also note that the record does not show that defense counsel ever objected to the seating of juror 11 on the panel, either for cause or otherwise.[16] Thus, we conclude that, even if this issue had been preserved, Shields has failed to demonstrate prejudice resulting from the peremptory challenge procedure that merits reversal in this case.[17]

## IV.

### A.

■ Shields next argues that counsel's deficient performance was such that he was "constructively absent" during the peremptory challenge portion of the trial, and therefore prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Cronic*, the Supreme Court held that when evaluating a claim of ineffective assistance of counsel, "surrounding circumstances [may] justify a presumption of ineffectiveness ... without inquiry into counsel's actual performance at trial." *Id.* at 662, 104 S.Ct. 2039. The Court later explained that circumstances justifying the presumption of prejudice must be such that counsel "provided such inadequate representation overall that the defendant 'was—either actually or constructively—denied the assistance of counsel altogether.'" *Cade v. United States*, 898 A.2d 349, 355 (D.C.2006) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)). In order to prove actual or constructive absence of counsel, "the attorney's failure must be complete.... '[C]ounsel [must] *entirely* fail[] to subject the prosecution's case to meaningful adversarial testing.'" *Bell v. Cone*, 535 U.S. 685, 697, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quoting *Cronic, supra*, 466 U.S. at 659, 104 S.Ct. 2039 (emphasis added)).

While we have previously applied the presumption of prejudice described in the *Cronic* line of cases, we have done so only when exceptional circumstances were present. *Yancey v. United States*, 755 A.2d 421, 428 (D.C.2000) (circumstances must be of a magnitude where there is "an actual breakdown of the adversarial process" (quoting *Cronic, supra*, 466 U.S. at 657, 104 S.Ct. 2039)); *see also In re*

---

**16.** Although Shields now asserts that juror 11 was stricken for cause, and then reseated over defense counsel's objection, there is nothing in the record to support this assertion, so we do not consider it. *See Bellamy v. United States*, 810 A.2d 401, 406 n. 7 (D.C.2002) (quoting *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982), for the proposition that "it is appellant's duty to present this court with a record sufficient to show affirmatively that error occurred").

**17.** In so holding we reject Shields's claim that the trial court's procedure for exercising peremptory challenges prevented defense counsel from consulting with him about whom to strike or that this procedure impeded counsel's ability to protect against *Batson* violations because any error must be considered harmless. *See supra* Part III.B.

*R.K.S.,* 905 A.2d 201, 216–17 (D.C.2006) (applying presumption of prejudice where counsel informed court that she was not prepared to go to trial, refused to lodge any objections to exhibits or cross-examine government witnesses, and declared that "she was not participating" during the first day of trial). For example, we recently declined to apply the *Cronic* presumption of prejudice in *Cade v. United States, supra,* 898 A.2d at 356, where the appellant argued counsel was constitutionally ineffective when counsel failed to inform him that during opening argument and throughout the trial, he would concede the appellant's guilt on every charge except a murder charge. Counsel did so in an attempt to establish that while Cade took part in the premeditated scheme to rob someone, he did not kill the victim and, in fact, he attempted to dissuade his co-conspirators from doing so—facts which the appellant voluntarily admitted prior to his arrest. *Id.* at 352. The jury convicted Cade on all charges, but could not reach a verdict on the murder charge. *Id.* at 353. He later pleaded guilty to second-degree murder while armed. *Id.*

In a collateral attack upon the convictions reached by the jury, the Superior Court ruled trial counsel was not "constructively" absent during trial and we affirmed, reasoning that "trial counsel was deeply engaged in the representation of his client" throughout trial. *Id.* at 355. Thus, Cade failed to demonstrate that his counsel's performance was such that it could be termed "a complete denial of the right to counsel that would result in the government's case having not been subject to meaningful adversarial testing." *Id.* at 356. Therefore, a traditional *Strickland* analysis was applied. *Id.*

*Cade* controls here. For example, the record shows that counsel fully participated in the for-cause strike portion of *voir dire.* Although counsel did not take complete notes during *voir dire,* he did record some facts about the prospective jurors to later assist him with the formulation of the strike sheet. Moreover, the record shows that counsel vigorously defended his client throughout trial. Counsel attempted to establish that Shields and his mother had permission from the true owner of the home on Queens Chapel Road to live there and take care of the property. Thus, on that theory, Shields had authority to enter the home to reestablish control over the property and to demand payment from the "squatters" who resided there. Through the witnesses' testimony, defense counsel further sought to establish that Shields had no intention of assaulting the occupants of the home and only did so in defense of "his" property. Counsel also vigorously challenged the chain of custody of the weapon recovered, made several foundational and hearsay objections, and otherwise "was deeply engaged in the representation of his client." *See Cade, supra,* 898 A.2d at 355. Therefore, on this record, we decline to apply the *Cronic* presumption of prejudice.

### B.

In a related argument, Shields asserts that his counsel was ineffective for failing to take advantage of the trial court's offer to revise the strike sheet, and that because the peremptory strikes were not "knowingly and intelligently made," he suffered prejudice under the *Strickland* analysis. In his reply brief, during oral argument and in supplemental briefing, he also argues that in light of our holding in *Robinson v. United States,* 448 A.2d 853 (D.C. 1982) (error to deny defendant's request to be present at the bench when individual *voir dire* was conducted), and its progeny, in which we said that certain violations of the right to exercise peremptory challenges are reviewed under the constitutional harmless error standard, we should

apply that standard when analyzing the prejudice prong of *Strickland* to this case. Thus, he contends, when assessing whether a peremptory challenge violation is harmless, we should focus our inquiry "on the degree or extent of deprivation of the right at issue." We reject that claim. Because Shields's right to be present at the bench during jury selection was not abridged and *Robinson* did not address the Sixth Amendment right to counsel, we discern no basis, in the circumstances presented here, for applying the constitutional harmless error standard set forth there. Instead, as discussed below, we apply the *Strickland* standard in which we focus on the effect of counsel's performance on the outcome of the trial.

█ In applying that standard, we must resolve the question of whether counsel's deficiency was such "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. 2052. Shields argues that we should not factor "actual juror bias" into the calculus of prejudice, but instead should take into account the "substantial impairment" that resulted from counsel's deficient performance. The government, on the other hand, urges us to require a showing of actual juror bias in order to reverse. We have yet to decide whether actual juror bias should be the applicable test when evaluating a claim of ineffectiveness with respect to the exercise of peremptory challenges, and conclude that it is not necessary to do so now. The strength of the government's case was such that we are confident the outcome of the case would not have been different, even if counsel's performance had not been deficient during the peremptory challenge phase of trial. *Boone v. United States,* 483 A.2d 1135, 1140 (D.C.1984) (noting strength of gov-

ernment's case was not overwhelming when applying harmless beyond reasonable doubt standard where the trial court erred in refusing to allow defendant to be present during individual *voir dire*). Thus, we conclude that the extent of the deprivation is irrelevant for purposes of assessing prejudice so long as there is no reasonable probability of a different outcome. *Strickland, supra,* 466 U.S. at 691–92, 104 S.Ct. 2052.

The record shows that Shields himself admitted to carrying a weapon to the house on Queens Chapel Road to order its occupants out of the premises. He also admitted to drawing the weapon without adequate provocation; there was no compelling evidence that either of the occupants assaulted or attempted to assault Shields before he drew the weapon. Several officers testified that after the initial assault—when they were attempting to arrest him—Shields did not relinquish his weapon, nor "stand down," until ten or twelve minutes after he was ordered to do so. In sum, Shields admitted nearly every element of the charged offenses. Thus, the evidence against Shields was so strong that his ineffectiveness claim must fail, *see Robinson v. United States,* 756 A.2d 448, 458 (D.C.2000) ("*Robinson II*"), and his convictions must be

*Affirmed.*