Michael B. MEADE, Appellant

v.

UNITED STATES, Appellee.

No. 09–CO–1425.

District of Columbia Court of Appeals.

Argued Oct. 4, 2011.
Decided July 26, 2012.

Jessica Brand, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Kristina L. Ament, Assistant United States Attorney, with whom Ronald C. Machen, Jr., United States Attorney, Roy W. McLeese, III, Assistant United States Attorney at the time the brief was filed, and John P. Mannarino and Anthony T. Quinn, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and TERRY, Senior Judge.

TERRY, Senior Judge:

On December 25, 1999, appellant was arrested and charged with first-degree sexual abuse while armed, along with two related offenses. On December 27 a Superior Court judge ordered him to be held without bond and scheduled a preliminary hearing for January 13, 2000. After the preliminary hearing was continued twice, appellant came before the court on January 28 and entered pre-indictment guilty pleas to two charges, assault with a dangerous weapon (ADW) and assault with intent to commit first-degree sexual abuse (AWICSA).[1] At a later date he was sentenced to consecutive prison terms of forty months to ten years on the first count and five to fifteen years on the second count. In the ensuing years appellant filed several post-conviction motions seeking various forms of relief, but they were all denied.

In January 2009 appellant filed yet another *pro se* motion to vacate his conviction of AWICSA, asserting that he had never actually assaulted the complaining witness, which the trial court construed as a motion for relief under the Innocence Protection Act (IPA), D.C.Code § 22–4135(a) (2001). The government filed an opposition to that motion. In response, appellant, through counsel, filed a "Supplement" to the motion, reiterating the claim of legal innocence and asserting that a letter from the complaining witness constituted newly discovered evidence. In the Supplement counsel also argued that, if the court found insufficient grounds for relief under the IPA, it should nevertheless allow appellant to withdraw his *Alford* plea and, accordingly, vacate his conviction and sentence. The court held a hearing on the motion, seeking the parties' views on whether an evidentiary hearing was required. After an extensive discussion, the court ruled that an evidentiary hearing

---

1. According to the government's brief, because appellant "claimed insufficient memory of the events [leading to his arrest] due to intoxication," he was "allowed to plead guilty pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), on the second count."

was not warranted and denied the motion. We affirm that ruling.

## I

### A. *Factual Background* [2]

In the latter part of 1999, following a conviction of assault, appellant was assigned to Hope Village, a Federal Bureau of Prisons halfway house in the District of Columbia. Because he was in a transitional status, he was not required to live in the halfway house; instead, he was allowed to work at a fast-food restaurant during the day and was under a curfew at night, which required him to remain at his home nearby in suburban Maryland. A correctional officer would monitor his compliance with the curfew by calling him on the telephone at home. If he violated the curfew, he would be cited for the violation, and the matter would be referred to his parole officer.

On December 24, instead of coming directly home from work, appellant attended a Christmas party with some of his coworkers. While at the party, he received a call from his roommate informing him that his correctional officer had called, and that he should come home immediately because she would be calling again. He left the party and returned home, but he had not yet arrived when the officer called again at about 1:30 a.m. on December 25. When he finally did arrive at home, he called the correctional officer, whom we shall call A.S., and argued with her over whether he should be cited for violating his curfew.

About an hour later, shortly after 2:30 a.m., appellant went to A.S.'s office at Hope Village and further disputed the curfew violation. During the argument, appellant pulled out an eight-inch butcher knife and slashed A.S. more than twenty times, mostly about the face, neck, and hands. A.S. fell to the ground and began to fade in and out of consciousness.

When A.S. attempted to crawl away, appellant grabbed her legs and pulled her toward him. He then removed her pants and underwear and hit her on the head with a fire extinguisher. At that point he took his penis out of his pants and placed it on her thigh and in her vulva. A.S. began screaming. In response to her screams, two residents of the halfway house came to her office, and there they saw appellant standing over A.S., who was lying on the floor, naked from the waist down. Appellant then fled, exclaiming, "Fuck that bitch and everybody else in this house."

Within a few minutes, paramedics arrived to attend to A.S.'s injuries. While she was still semi-conscious, A.S. told one paramedic that she had been raped. Medical records later reflected that she had an abrasion within her vulva, an injury indicative of sexual assault.

A few weeks later, appellant pleaded guilty to one count of ADW and one count of AWICSA, and in due course he was sentenced as previously described. During his incarceration, A.S. remained in contact with appellant and, on at least one occasion, wrote to the United States Parole Commission to request that his sentence be reduced.

### B. *The Present Motion*

In January 2009 appellant filed a *pro se* motion to vacate his conviction of AWICSA

---

**2.** Our summary of the underlying facts is derived from a recitation of those facts by government counsel at the hearing below. That recitation, in turn, was based on the government's response to one of appellant's earlier *pro se* motions to withdraw his guilty plea, a copy of which is appended to the government's brief. A transcript of appellant's plea proceeding in January 2000 is not available.

on the ground of actual innocence, asserting that he had never sexually assaulted A.S. and relying in part on a letter that she had written on his behalf to the Parole Commission. The government filed an opposition, and shortly thereafter appellant obtained new counsel. Then, on August 3, 2009, almost ten years after the assault, A.S. wrote a letter to the sentencing judge. Describing herself as "a woman of faith," she stated in part:

> I am asking your help in correcting the charges that were given to [appellant] in a plea, charges that just didn't happen. Specifically, the Rape or Intent to Rape charge! ... I don't recall any actions that could have been construed as an attempted Rape or a Rape.... Your Honor, I was not Raped, and I strongly feel because of the accompanying facts that prove my claim and me as the victim stating the same, it is not fair and I am troubled by this.

Counsel then filed a Supplement to the original *pro se* motion. The Supplement acknowledged that appellant had entered his plea after being confronted with "strong evidence of guilt ([A.S.'s] statement corroborated by the Hope Village residents' circumstantial testimony)." Nevertheless, viewing the letter from A.S. as a recantation, counsel asked the court to allow appellant to withdraw his *Alford* plea under Super. Ct.Crim. R. 32(e) and to vacate his conviction, both on the ground of newly discovered evidence under D.C.Code § 23–110, and on the ground of actual innocence under the IPA.[3]

The court scheduled the motion for a hearing. After considering arguments from both the government and appellant's counsel, the court concluded that even if A.S.'s letter were accepted as true, it would not be sufficient to entitle appellant to relief. The court noted that A.S. was apparently "thinking [of] rape in its classical sense with penetration," whereas the medical evidence "doesn't support penetration, but it does support ... some form of attempted sexual act." Interpreting her letter as having been based on "a misunderstanding of what the charge actually was," the court pointed out that appellant was not convicted of rape:

> [A] lay person said I wasn't raped ... and she's looking at the medical record and there's no proof of rape, but there's some other proof of a sexual assault, and she seems to have in her mind the issue of rape, but Mr. Meade didn't plead to that, even under *Alford.*

Government counsel said in response:

> [E]ven if what [A.S. says in the letter] is true, for the sake of argument, it does not present sufficient facts for this court to conclude ... even by a sufficient amount of evidence to justify a hearing on the issue of whether the defendant is actually innocent of the charge of assault with intent to commit first degree sexual abuse.

The court then delivered its ruling. It agreed to "credit" A.S.'s statement, but added:

> [M]y impression of her ... [is] that she's a woman who believes in redemption, and ... I think believes that Mr. Meade has redeemed himself over the years and that the sentence that the court imposed ultimately was too harsh, or ... [that] he's not being granted parole.
>
> That being said, the court concludes that ... the defense has not met its

---

**3.** In the trial court, appellant also asserted that certain medical records provided by A.S. constituted newly discovered evidence. The court ruled, however, that these records were not new evidence, and appellant does not challenge that ruling on appeal.

burden to show that he's actually innocent of this case.

\* \* \* \* \* \*

... The court notes, in terms of the key facts in this case ... that the defendant committed an especially heinous and violent attack with this knife ... against his helpless victim, who sustained very serious wounds and reported a loss of consciousness.

So it was always an issue as to what degree she actually knew what was happening to her.... [T]his part is uncontested, that at one point the defendant removed her pants and underwear, and that [he] placed his penis ... on her vulva but was unable to penetrate.

It is true that the witnesses who came to her rescue ... didn't see that act ... didn't see her being disrobed either, but there was evidence that came from her that [was] sufficient to warrant a factual finding by the court in this *Alford* case that ... he attempted first-degree sexual abuse.

And this is further buttressed by ... the medical records that are extant, although certainly not voluminous, do support, then and now ... that she had injuries consistent with a sexual assault, and that those records prove that.

They didn't prove penetration, but they didn't need to.... The court concludes that it was more than sufficient evidence to indicate that the defendant attempted to penetrate her and not just degrade her.

... The court concludes that a hearing is not necessary, that this evidence had not been set forth sufficiently to warrant the court to make a finding that the defendant is, more likely than not, actually innocent of this crime....

The court therefore denied the motion in all respects.[4]

## II

 In a case such as this, "the question whether a hearing is required is confided to the sound discretion of the trial court." *Webster v. United States,* 623 A.2d 1198, 1206 (D.C.1993). Although a general presumption exists in favor of an evidentiary hearing in cases involving a collateral attack on a conviction, no hearing is required under Rule 32(e), D.C.Code § 23–110, or the IPA "where defendant's motion consists of (1) vague and conclusory allegations, (2) palpably incredible claims, or (3) allegations that would merit no relief even if true." *Cade v. United States,* 898 A.2d 349, 354 (D.C.2006) (citations and internal quotation marks omitted) (discussing the standard for § 23–110); *see Bell v. United States,* 871 A.2d 1199, 1202 (D.C.2005) ("The standard for when a hearing must be held under the IPA mirrors exactly the standard for a hearing required by D.C.Code § 23–110" (citation omitted)); *Goodall v. United States,* 584 A.2d 560, 562 (D.C.1990) (applying "the standard for denying a § 23–110 motion without a hearing" to a Rule 32(e) motion to withdraw a guilty plea).[5]

---

4. The court also ruled that the motion was procedurally barred as a "second or successive claim" under both Criminal Rule 32(e) and D.C.Code § 23–110, noting that appellant had filed "numerous collateral attacks in various forms." *See Bradley v. United States,* 881 A.2d 640, 645 (D.C.2005) (citing cases). The government, in a footnote in its brief, contends—and we agree—that we need not address the correctness of this ruling "because

the trial court, despite its comment, ruled on the merits of [appellant's] claims."

5. The government argues that appellant invited any error in the denial of an evidentiary hearing by agreeing that a hearing would not be necessary if the trial court credited A.S.'s letter and that, at most, appellant's claim can be reviewed only for plain error. We cannot agree. The invited error doctrine and plain

Appellant maintains that A.S. recanted her account of the assault in her letter to the sentencing judge. We conclude, however, that her letter "would merit no relief even if true." [6] *Cade*, 898 A.2d at 354. "In order to prevail on a post-sentence motion either to withdraw a guilty plea under Super. Ct.Crim. R. 32(e), or to vacate a sentence under D.C.Code § 23–110, appellant must show that he suffered 'manifest injustice,' and that the trial court's refusal to grant his motion was an abuse of discretion." *Eldridge v. United States*, 618 A.2d 690, 695 (D.C.1992) (citation omitted). To set aside a conviction under the IPA, appellant must prove "by clear and convincing evidence that [he] is actually innocent of the crime." D.C.Code § 22–4135(g)(3).[7] Even if A.S. had recanted and her recantation was credited, we hold that appellant would not be entitled to relief under either the manifest injustice or the actual innocence standard.[8]

In the first place, on this record, the evidentiary value of A.S.'s purported recantation is low. A.S.'s recantation would, at best, have been used to impeach her initial account of the events that a rape or attempted rape had occurred. *See Godfrey v. United States*, 454 A.2d 293, 303 (D.C.1982) (in a hearing on defendant's motion for new trial, complainant could have been impeached with his later recantation). It has long been established that "[r]ecanting affidavits and witnesses are looked upon with 'the utmost suspicion' by the courts." *United States v. Kearney*, 220 U.S.App.D.C. 379, 384, 682 F.2d 214, 219 (1982) (citing numerous cases). "[W]itnesses may recant for numerous reasons that have nothing to do with furthering the truth or justice." *Godfrey*, 454 A.2d at 300 n. 26. The trial court, although it did not question the sincerity of A.S.'s motives (nor do we), concluded: "[M]y impression of her, I've never actually seen her—was that she's a woman who believes in redemption, and—and I think believes that Mr. Meade has redeemed himself over the years and that the sentence that the court imposed ultimately was too harsh." In other words, A.S.'s recantation was motivated not by her belief that appellant was

error review are not appropriate here because appellant's counsel agreed that a hearing would not be necessary only if the trial court both credited A.S.'s letter *and* treated the letter as a recantation. On appeal, appellant argues *inter alia* that the court erred by failing to treat the letter as a recantation. We need not decide that point; see note 6, *infra*.

6. We note, as the trial court did, that whether A.S.'s letter constituted a factual recantation is highly questionable, since she appeared to state only a legal conclusion that no rape or attempted rape occurred. Nevertheless, for the purpose of determining whether the trial court erred in denying appellant's motion without an evidentiary hearing, we will assume for the sake of argument that A.S.'s letter should be regarded as a recantation.

7. The standard for obtaining a new trial under the IPA, however, is lower and requires only proof "that it is more likely than not that the movant is actually innocent of the crime." D.C.Code § 22–4135(g)(2). Appellant in his brief applies the lower IPA standard for obtaining a new trial. In his motion before the trial court, however, appellant never requested a new trial under the IPA. Indeed, at the motion hearing, after the court inadvertently referred to the "more likely than not" standard, appellant's counsel corrected the court, stating, "For the record, I think Your Honor meant the motion to withdraw the plea, not a new trial." In any event, for the reasons stated hereafter, appellant would not have been entitled to relief even under the lower "more likely than not" standard.

8. An evidentiary hearing is not required if the trial court does not credit the recantation. *Bell*, 871 A.2d at 1201. In this case, however, the government agreed to credit A.S.'s letter to the judge for the purpose of determining whether an evidentiary hearing was necessary, and the judge agreed to credit her statements.

actually innocent, but by her feeling that he had suffered enough.

A.S.'s letters to the Parole Commission support this conclusion. In a letter dated April 5, 2008, just a little more than a year before her alleged recantation, she stated:

I have been communicating with Michael Meade over the last eight years, starting August 2000. We have talked about ... what he did to me. Michael Meade has related concerns of my recovery with an apologetic heart as to what he had done.... I do accept the apology and the deep expression of remorsefulness of the actions of Michael Meade.[9]

In a second letter dated July 13, 2008, A.S. stated that her medical records indicated that no rape had occurred, but she did not retract her initial account of the assault in which she said that appellant had attempted to rape her. In neither letter did A.S. assert that no attempted rape, or assault with intent to commit first-degree sexual abuse, occurred; rather, the letters generally indicated her unhappiness with appellant's sentence.

In addition, A.S.'s purported recantation did not indicate with any specificity or clarity just which parts of her prior account were untrue. She wrote that she wanted to "correct[ ] the charges that were given to [appellant] in a plea," but she did not actually claim that appellant did not physically assault her. Although she did state that she could not "recall any actions that could have been construed as an attempted Rape or a Rape," these statements were legal conclusions, as the trial court recognized. She never actually retracted any of her prior statements, nor did she claim that she had not told the truth when she said that appellant took his penis out of his pants and placed it on her thigh and in her vulva. A.S.'s failure to repudiate or deny her contemporaneous account of what happened makes it unlikely that her alleged recantation would lead to a different result. *See United States v. Lowe,* 110 F.3d 65 (6th Cir.1997) (unpublished opinion, available at 1997 WL 160340 (C.A.6 1997)).

Thus, even if we view A.S.'s letter to the judge as a recantation, we hold that appellant has failed to show that a manifest injustice occurred or that he is actually innocent by clear and convincing evidence. *See Upshur v. United States,* 742 A.2d 887, 892 (D.C.1999); D.C.Code § 22–4135(g)(3). First, he does not dispute that he seriously assaulted A.S. with a knife (nor could he, given the extent of her wounds as reflected in the medical records). Second, A.S. stated that, during the attack, appellant took his penis out and placed it on her thigh and in her vulva. Although this statement would be subject to impeachment by A.S.'s recantation, we note again that her initial account of what happened continues to carry weight, especially in light of its consistency with the other evidence. Third, two residents of the halfway house saw appellant standing over A.S. with her pants and underwear removed; tellingly, she remained clothed from the waist up, a fact which strongly suggests an intent to commit rape or sexual abuse. Fourth, a paramedic recalled that while A.S. was receiving treatment, she reported having been raped. While the value of this statement might also be subject to impeachment by A.S.'s recantation, the circumstances in which the statement was made, shortly after the assault while she was receiving treatment, at least arguably lend it more weight than the recantation. *See Guthrie v. United States,* 92 U.S.App.D.C. 361, 364, 207 F.2d 19, 22 (1953) (discussing the

9. This letter was apparently not received by the Parole Commission.

trustworthiness of excited utterances). Finally, A.S.'s medical records reported an abrasion of her vulva, an injury consistent with a sexual assault. Considering A.S.'s recantation in this context, we conclude that appellant has failed to show that a manifest injustice occurred or that he is actually innocent.

The order from which this appeal is taken is therefore

*Affirmed.*