**In re Glenn Davis FERGUSON.**

**No. 09–FM–1219.**

District of Columbia Court of Appeals.

Submitted May 11, 2011.
Decided Feb. 23, 2012.

---

the evidence was insufficient as to one of the counts and reverse the conviction on that basis. We reverse the other conviction on the ground that the trial court erred in relying on a concession by defense counsel that was tantamount to a guilty plea, without assuring that appellant understood the consequences of that concession.

## I.

The record shows that in September 2008, Bonita Keeton petitioned for a CPO against appellant, her former boyfriend and father of her two-year-old daughter, Angel. On October 22, 2008, the trial court issued a CPO ordering, *inter alia*, that appellant not contact Keeton "except under the following conditions: Only regarding the child and announcement for pick up and return of the child" (for visitation). At trial on August 31, 2009, Keeton testified that, on December 24, 2008, she received a phone call from appellant in which he asked whether she was "going to be home for Christmas because he had a present that Angel had bought" for Keeton. Keeton testified:

> I told him that no, I wasn't going to be home and how did Angel get me a present when Angel don't have a job. . . . And he asked me was I going to be home and I told him, no, I wasn't going to be home. And so he said well, I'll just throw it in a box with everything else.

Keeton further testified that on January 1, 2009, appellant called her and said, "Happy New Year, or something." Keeton testified that there was "really no conversation because [she] told him, I'm not talking to you." She explained:

> I didn't even want to listen to anything he had to say. My first response was, I'm not talking to you and you're not supposed to be calling me and I'm not talking to you. And that was it. He

Regina Michaels, appointed by the court, for appellant.

Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, Rosalyn Calbert Groce, Deputy Solicitor General, and Sidney R. Bixler, Assistant Attorney General, for appellee.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and WAGNER, Senior Judge.

PER CURIAM:

After a bench trial, appellant Glenn Ferguson was found guilty of two counts of criminal contempt for violation of a civil protection order ("CPO"). On appeal, he argues that the evidence was insufficient to support his convictions. We agree that

... said something about—I don't, I don't remember what he said, but I know I was adamant about, I'm not talking to you, I'm not supposed to talk to you, and that was it. It was—wasn't a whole lot of conversation on that day. Keeton stated that appellant "didn't say anything about Angel," but added that she "did not give [him] ... a[n] opportunity to state why he was calling."

At the close of the government's evidence, defense counsel made a motion for judgment of acquittal as to the contempt charges related to appellant's contact with Keeton on January 1, 2009 and another contact with her on January 3, 2009. However, counsel "concede[d]" appellant's guilt as to the December 24, 2008 phone call.[1] Counsel twice repeated that concession (answering "Yes[,] Yes" when the court asked, "And so you concede on the December date, yes?" and explaining that he "didn't argue about the December 24th" since appellant "kept talking" during the call he placed to Keeton that day).[2] After the court denied the motion for judgment of acquittal, appellant took the stand and testified regarding his defense to the contempt count that was based on the contact he had with Keeton on January 3, 2009 (as to which the court thereafter "decline[d] to find him guilty"). Appellant was asked no questions and gave no testimony about the December 24, 2008 and January 1, 2009 telephone calls. In the closing arguments that ensued, neither counsel argued with respect to the December 24 incident.

In finding appellant guilty of violating the CPO on December 24 and January 1, the court stated, "There is no dispute about December 24 and so the Government has met its burden [i]n that regard."

The court stated that it was also "satisfied that the Government ha[d] met its burden" as to the January 1 telephone call, reasoning that January 1 was "not the day of [scheduled] visitation," and that appellant's rationale when he made that call was that "I know what the order says, but I'm calling you based upon these 15 odd years that we've been together, and I'm saying Happy New Year."

## II.

In CPO violation cases, "[w]e must view the evidence in the light most favorable to sustaining the judgment." *Ba v. United States,* 809 A.2d 1178, 1182–83 (D.C.2002) (citation and internal quotation marks omitted). "However, whether the acts in which the defendant was found to have engaged constitute [a CPO violation] ... is a question of law, and we review the trial court's resolution of that question *de novo." Id.* (citations and internal quotation marks omitted). "[W]e have an obligation to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a trier of fact behaving rationally could find it persuasive beyond a reasonable doubt." *Davis v. United States,* 834 A.2d 861, 866 (D.C. 2003) (internal brackets omitted).

"To establish the elements of a CPO violation, the government must present evidence proving beyond a reasonable doubt that defendant engaged in: (1) willful disobedience (2) of a civil protection order." *Hooks,* 977 A.2d at 939 (citing *Davis,* 834 A.2d at 866). "The offense requires both a contemptuous act and a wrongful state of mind." *Id.*

---

1. Specifically, asked by the court whether he had "anything else to say about the other date [December 24, 2008]," counsel stated, "I'll concede that the day of—I try to be honest, Your Honor."

2. During the trial, appellant made no statements on the record regarding any of these concessions.

## III.

■ Appellant contends that notwithstanding defense counsel's concession that appellant's December 24 phone call to Keeton "was a violation of the CPO," "the trial court erred in finding [appellant] guilty, as the action did not violate the language of the CPO as written." We cannot agree. Even if we interpret the CPO to have permitted—as a contact "regarding the child"—a call from appellant to Keeton that was genuinely about "a present that Angel had bought" for Keeton,[3] there remains appellant's repeated question to Keeton about whether she was "going to be home" (what counsel recognized as appellant's having "kept talking"). We think the evidence presented was sufficient to permit the trial court to find that appellant's further question to Keeton was not genuinely "regarding the child," but instead represented an effort to have contact with Keeton outside the bounds permitted under the CPO.

■ Nevertheless, we conclude that appellant is entitled to a reversal of his conviction. Defense counsel's concession that appellant violated the CPO when he "kept talking" during the December 24 call was equivalent to a guilty plea, entered without appellant having been afforded any of the requisite safeguards. It has long been recognized that in a criminal case, "where a stipulation is tantamount to a guilty plea the trial court must be careful to ensure, by analogy to [Super. Ct.Crim.] Rule 11 that the defendant understands the consequences of a stipulated trial...."

*Glenn v. United States,* 391 A.2d 772, 776 (D.C.1978) (affirming conviction although appellant's stipulation was tantamount to an admission of guilt where prior to its acceptance the court had in fact advised him of his rights in accordance with Rule 11); *Wiley v. Sowders,* 647 F.2d 642, 649 (6th Cir.1981) (defense counsel may not admit his client's guilt, contrary to his earlier plea of not guilty, nor stipulate to facts which are the equivalent of a guilty plea).[4] In this case, there is nothing to show that appellant was apprised of the consequences of counsel's concession of guilt. Having pleaded not guilty, appellant preserved his constitutional right to a fair trial, including a weighing of the evidence by the trier of fact and "the right to hold the government to strict proof beyond a reasonable doubt as to the offense charged." *Id.* at 650. Because of counsel's concession, that did not happen. Although appellant took the stand in his own defense, defense counsel elicited no testimony concerning the December 24 charge and made no argument about it. Similarly, it is not clear, having heard counsel's concession, the trial court made an independent assessment of the evidence presented. On this record, we cannot affirm the conviction.

## IV.

■ With regard to his contempt conviction based on the January 1 call, appellant argues that the government did not prove that he violated the CPO since the evidence was that Keeton "hung up the

---

3. We note that, in an effort to forestall potential future disputes about the scope of the permitted contacts with Keeton and to provide the court with "written document[ation] about what was said," the trial judge at sentencing changed the terms of the CPO prospectively. The court restricted appellant's phone contact with Keeton to "an emergency" that "pertain[s] to the child" and limited other contacts pertaining to the child to "text

or e-mail" messages. In light of the parties' dispute about the interpretation of the CPO, *see note* 5 *infra,* we think the court acted wisely in making these changes.

4. *See also Pinkney v. United States,* 851 A.2d 479, 496, 497 & n. 24 (D.C.2004) (suggesting a difference between stipulations of some facts and a stipulation that constitutes an admission of guilt).

telephone ... abruptly before finding out the reason for [appellant's] call, ... since there was no evidence at trial as to the purpose of his call," and since the CPO allowed for some telephone calls. We agree that the evidence was insufficient to establish beyond a reasonable doubt that appellant willfully violated the terms of the CPO when he made the January 1 call.

As described above, the CPO expressly prohibited appellant from contacting Keeton except "regarding the child."[5] On the evidence presented, it is unclear for what purpose appellant called Keeton on January 1, and therefore unclear whether appellant contacted Keeton with "a wrongful state of mind" and in fact violated the terms of the CPO. Keeton testified that when she answered her telephone, appellant greeted her with "Happy New Year" or something to that effect, and Keeton immediately hung up the telephone after telling him not to call her. The trial court reasoned that, had he been calling for a legitimate purpose, appellant should have said, "I need to say something about the child[ ]," or something to that effect, before allowing Keeton to hang up the tele-

phone. Keeton testified, however, that she "did not give Mr. Ferguson ... a[n] opportunity to state why he was calling." The evidence afforded the trial court no way of discerning, other than through speculation, what appellant's intention was when he placed the January 1, 2009 call to Keeton. *See Hooks*, 977 A.2d at 941 ("The evidence is insufficient if, in order to convict, the finder of fact is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation."); *cf. Commonwealth v. Consoli*, 58 Mass.App.Ct. 734, 792 N.E.2d 1007, 1011 (2003), and cases cited therein (suggesting that if a greeting by a defendant to the beneficiary of a protective order is a routine civility that is "incidental" to the defendant's exercise of a right not prohibited by a protective order, the greeting would not violate the order). Even when we view the record in the light most favorable to the government, as we have done, there is a lack of evidence to show that Ferguson violated the CPO when he began his January 1 call to Keeton with, "Happy New Year," and (as far as the record reveals) said nothing more.[6] *Cf.*

5. The government urges us to interpret the CPO as permitting appellant to contact Keeton only for the purpose of "visitation rights" (i.e., in the language of the CPO, only for "announcement for pick up and return of the child"). However, the CPO states that appellant may contact Keeton "regarding the child *and* announcement for pick up and return of the child" (emphasis added), not just regarding "pick up and return of the child." The conjunctive "and" implies that there are two permitted topics of contact: (1) regarding the child and (2) regarding announcement for pick up and return of the child. As noted earlier, the trial court appeared to interpret the CPO in the same manner as we do, explaining to appellant that "unless you have something to say about Angel, about Angel's health, Angel's welfare, [or] specific issues of visitation, ... there is nothing else for you to exchange" with Keeton. Moreover, to the extent that the CPO is ambiguous, we must "construe ambiguities ... as redounding to

the benefit of the person charged with contempt." *In re Jones*, 898 A.2d 916, 922 (D.C. 2006) (citations omitted). Even though, as the court found, January 1 was "not the day of [scheduled] visitation," we do not read the CPO in effect on January 1, 2009, as prohibiting appellant from calling on other days about visitation or otherwise "regarding the child."

6. The government asserts that the evidence showed that appellant "continued to talk" after Keeton rebuffed his "Happy New Year" greeting. The government relies on the following portion of Keeton's direct testimony:

I didn't even want to listen to anything he had to say. My first response was, I'm not talking to you and you're not supposed to be calling me and I'm not talking to you. And that was it. He ... said something about—I don't, I don't remember what he said, but I know I was adamant about, I'm not talking to you, I'm not supposed to talk

*Hooks*, 977 A.2d at 940–41 ("Even viewed in the light most favorable to the government, this exchange is much too ambiguous to prove beyond a reasonable doubt that appellant acted willfully."). "To sustain a conviction on these facts, we would have to reach out to find justification for doing so. This is not our task, especially in a criminal case." *In re Jones*, 898 A.2d at 922 (citing *Vaas v. United States*, 852 A.2d 44, 48 (D.C.2004) (Schwelb, J., concurring)). For these reasons, we reverse the conviction that was based on appellant's January 1, 2009 call to Keeton.

For the foregoing reasons, the judgments of conviction are

*Reversed*

WAGNER, Senior Judge, concurring, in part, and dissenting in part:

I agree with the majority that appellant's convictions require reversal. However, I depart from the opinion insofar as it decides that, absent defense counsel's improvident concession of guilt, the evidence related to the December 24th incident is sufficient for conviction. First, when reviewing for evidentiary sufficiency, this court's deference to the trial court's finding of guilt presupposes that the trier of fact has weighed the evidence, drawn justifiable inferences, and determined credibility.[1] That did not happen here. The trial court made no independent assessment of the evidence and made no factual findings supporting the guilty verdict on this count. Rather, in finding appellant guilty, the court relied upon the concession of guilt to the charge made by defense counsel. According to the evidence, on Christmas eve, appellant called his two-year-old daughter's mother (petitioner) and told her that he had a gift for her that the child had purchased and inquired whether she would be at home.[2] Whether the trial court would have credited this evidence, recounted further in the margin, and made the inferences necessary to reach the conclusion that appellant willfully violated the CPO's mandate prohibiting contact unless it was regarding the child or for visitation, we do not know

---

to you, and that was it. It was—wasn't a whole lot of conversation on that day.

We do not read the foregoing testimony as indicating clearly that appellant "continued to talk," especially in light of Keeton's statement, during cross-examination, that she did not "give Mr. Ferguson, on January 1st, a[n] opportunity to state why he was calling." In addition, on re-direct examination, Keeton stated that she "just heard [appellant's] voice saying, Happy New Year, or something. And then I told him I wasn't talking to him." The testimony can reasonably be read (and we read it) as denoting that appellant said nothing more than "Happy New Year," or something to that effect, before she hung up the telephone.

1. *See Koonce v. United States*, 993 A.2d 544, 551 (D.C.2010) (quoting *Spencer v. United States*, 688 A.2d 412, 415 (D.C.1997)) (acknowledging that a review for evidentiary sufficiency is "an exercise of considerable deference in which this court views the evidence in the light most favorable to the government, 'giving full play to the right of the [trier of fact] to determine credibility, weigh the evidence, and draw justifiable inferences of fact.' ")

2. In testimony, petitioner recounted this telephone call as follows:

Just a brief moment while he said how Angel [their child] had bought a present for me and was I going to be home. And I said no, and I said, how did Angel get a present for me because Angel don't have a job. And I stated that no, I was not going to be home, and that was the end of the conversation.

The court questioned petitioner, and she responded as follows:

The Court: On the December 24, all that Mr. Ferguson said is that he had a gift for you that Angel purchased?

[Petitioner]: Yes.

The Court: Did he say anything else about the children?

[Petitioner]: No.

on this record. Such determinations, quintessentially for the trier of fact, cannot be supplied by this court.[3] While a remand for further findings is sometimes sufficient to address such situations, it is inadequate here because but for the concession of guilt, the record might have developed differently with, for example, opposing evidence and argument. Appellant should have an opportunity, at the very least, to offer a defense without an uninformed concession of guilt and to have the trial court weigh the evidence, make factual determinations and determine his guilt or innocence.

Finally, I do not agree that the evidence that was presented, absent the concession, was adequate to prove beyond a reasonable doubt that appellant willfully disobeyed the terms of the CPO.[4] Put another way, it cannot be found or reasonably inferred from this evidence that appellant's call to attempt to arrange for his daughter to give her mother a Christmas present, a common occurrence, is not related to the child.[5]

For the foregoing reasons, I respectfully dissent from that portion of the majority opinion as indicated above. Otherwise, I concur.

---

3. *See McCoy v. United States,* 781 A.2d 765, 769 n. 3 (D.C.2001) (citation omitted) (noting "that judging credibility of witnesses is the quintessential function of the trier or fact, a task reserved for the [trier of fact], and *not* this court" (emphasis added)); *see also Scott v. United States,* 953 A.2d 1082, 1094 (D.C. 2008) (citation omitted) (noting deference accorded the trial court's credibility determinations as well as "its ability to draw justifiable inferences of fact.").

4. *See* footnote 2, *supra. See also Hooks v. United States,* 977 A.2d 938, 939 (D.C.2009)

(citing *Davis v. United States,* 834 A.2d 861, 866 (D.C.2003)) (setting forth elements of proof required for a contemptuous violation of a CPO).

5. According to the government, the trial court and the parties proceeded on assumption "that the CPO prohibited all contact except calls relating to visitation." This may explain defense counsel's improvident concession. For the reasons stated in the majority opinion, I agree that the CPO also allowed any contact regarding the child.