*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CF-745

DENARDO S. HOPKINS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-4564-08)

(Hon. Florence Pan, Trial Judge)

(Argued December 18, 2013                    Decided January 30, 2014)

*T. Gail Maddox-Levine* for appellant.

*Nicholas P. Coleman*, Assistant United States Attorney, for appellee, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and BLACKBURNE-RIGSBY, *Associate Judges*, and NEBEKER, *Senior Judge*.

GLICKMAN, *Associate Judge*: In his opening statement at appellant Denardo Hopkins's trial, defense counsel informed the jury that Hopkins was contesting only the firearms charges against him, not the drug distribution charges, which

counsel conceded were true. This strategy was not unsuccessful—the jury convicted Hopkins of (unarmed) possession with intent to distribute ("PWID") heroin and cocaine, but not of the other offenses—and Hopkins does not claim that his counsel was ineffective or acted against his wishes. Hopkins asks us to reverse his convictions, however, because the trial judge did not intervene sua sponte to determine whether he knowingly and voluntarily agreed to his counsel's concessions in opening—concessions that Hopkins argues were tantamount to a guilty plea. We reject Hopkins's claim of error and affirm his convictions.

## I.   Facts

On February 26, 2008, according to the government's evidence at trial, two Metropolitan Police Department officers entered a building at 5316 E Street, Southeast, and interrupted a group of people engaged in a craps game. Hopkins, who was one of the players, got up and ran toward the staircase. Officer Barry Gomez ran after him. Just before Hopkins started up the stairs, Gomez saw him throw something. The object hit the wall and fell to the ground with a metallic clang. Gomez apprehended Hopkins, patted him down for weapons, and felt a plastic bag in his pants. Suspecting Hopkins was carrying narcotics, Gomez proceeded to remove forty-four "zips" of crack cocaine, seven of heroin, and $230

in cash from Hopkins's pockets. Gomez then went back to where he had seen Hopkins throw something. There on the ground, the officer observed a semiautomatic pistol.

Hopkins was charged with two counts of PWID while armed (one count for the cocaine, the other for the heroin), two counts of possession of a firearm during a crime of violence, and one count each of carrying a pistol without a license, possession of an unregistered firearm, and unlawful possession of ammunition.

Prior to trial, defense counsel informed the court that Hopkins would stipulate to the anticipated testimony of a forensic chemist that the zips seized from Hopkins contained .44 grams of heroin and 3.1 grams of cocaine. Before the stipulation was read to the jury, the judge inquired of Hopkins personally and confirmed that he understood he had the right to have the chemist appear and testify in court.[1]

---

[1] The judge told counsel she "just want[ed] to make sure your client understands," and then addressed Hopkins as follows:

> Do you understand sir, that you do have the right to have
> a witness come into court to testify about the fact that the
> controlled substances that were found that day actually
> were drugs? . . . Oftentimes defendants will waive their
> right to have people come testify about that because it

*(continued…)*

This stipulation was part of the defense strategy to contest the firearm charges and the "while armed" enhancement to the PWID counts while not disputing the underlying PWID charges. Before trial, counsel explained to the court that Hopkins was "amenable to resolving this case short of admitting the gun was his. He cannot and will not admit the gun was his." The government insisted, however, that any plea agreement would have to include a plea of guilty to a weapon count.

In his opening statement, Hopkins's counsel told the jury that Hopkins conceded the PWID charges, but that the evidence would show he was not armed and had nothing to do with the gun that Officer Gomez had recovered:

> I will start out by saying that the theme of this is honor among thieves, okay. Mr. Hopkins is going to admit to some very difficult things right from the beginning. He

(continued…)

> makes the trial go a little bit faster. And if it's something that they're not really contesting that they don't think that that's not true they will do that. But it's up to you. If you want to have people come in and testify about that you could . . . . [Y]our lawyer is saying he is willing to agree. But you have to agree as well that you don't need those witnesses."

Counsel then spoke with Hopkins off the record. After this discussion, the court asked, "Do you understand now sir?" to which Hopkins responded "Yes ma'am."

> is going to take that out of your equation. Because there's some things that we're just going to be forthright and honest with you right from the beginning . . . . Mr. Hopkins had drugs on his person, okay. He had 44 zips of cocaine on his person. He had some small zips of heroin on his person. All right. And he had the intent eventually to distribute those in some kind of way. We're taking that out of the equation right from the beginning.
>
> The fact that is in dispute in this case, it is the central part of this case, is the gun . . . . I submit to you right now at the beginning of this case, if you found any physical evidence in this case that . . . links that gun to Mr. Hopkins, find him guilty. Find him guilty of all the charges. Because there isn't any. And I can make that statement right from the beginning.

In accord with this theory of the case, defense counsel's cross-examinations of Officer Gomez and the other government witnesses focused largely on the issue of the discovery of the gun, its handling by the MPD, and its alleged connection to Hopkins. On cross-examination, Gomez admitted that he had violated a police protocol by moving the gun before a crime scene search officer could recover and photograph it where it had been discovered, and that in doing so he had picked up the gun with his bare hands. Officer Michael Pemkert, a member of the crime scene unit, who processed the weapon, confirmed on cross-examination that he was not called on the scene to recover or photograph the weapon and that it is possible to "smudge" fingerprints by handling an item without gloves. Hayward Bennett, a latent fingerprint specialist at MPD, testified that the fingerprints

recovered from the pistol were "of no value." Detective George Thomas, an expert on the distribution and packaging of crack cocaine and heroin, testified that the quantities of cocaine and heroin found on Hopkins were not consistent with personal use and that there was a relationship between drug dealing and firearm possession. Defense counsel cross-examined Thomas extensively, eliciting from him that some people do "sell drugs without having a gun on their person."[2]

Hopkins did not testify in his own defense, but the defense called four other witnesses.[3] Michael Taylor and Christopher Holmes testified that they were on the scene when the police arrived, saw Hopkins run, and did not see him throw anything. Alton Smith, who also claimed to have been present, testified that he saw another man, Steven Harrison, throw a gun near where Officer Gomez found the weapon Hopkins was charged with having possessed. Steven Harrison then took the stand and testified that he was at the craps game, that he ran when he saw

---

[2] In addition, though counsel had seemed to say in his opening statement that Hopkins had intended to distribute the heroin as well as the cocaine, he later told the court he meant to "conced[e] on the cocaine" but "[n]ot necessarily on the heroin," and he cross-examined Detective Thomas as to whether the relatively small quantity of heroin found on Hopkins was consistent with possession for personal use.

[3] The court conducted the standard *Boyd* inquiry to assure that Hopkins knowingly and intelligently waived his right to testify. *See Boyd v. United States*, 586 A.2d 670, 677 (D.C. 1991).

the police, and that it was he who threw the handgun on his way out of the building.

In closing argument, defense counsel again acknowledged Hopkins's possession of the drugs and reiterated that "[t]his is a case about the gun." Counsel focused on the lack of physical evidence tying Hopkins to the gun and emphasized that the gun charges rested solely on the testimony of Gomez: "[T]here is only one officer. So, not only do[es] [the government] not have any physical evidence corroborating but you don't have any other testimony corroborating." He also connected Officer Gomez's violation of protocol in handling the gun with the unusable fingerprints, arguing that "if proper procedure had been followed, you would have the physical, the concrete, the reliable, the unbiased, the hard evidence that would exonerate Mr. Hopkins."

The jury ultimately found Hopkins guilty only of the lesser included offenses of unarmed PWID cocaine and unarmed PWID heroin. After it reported being "absolutely deadlocked on all 7 remaining jury questions," the judge declared a mistrial on the remaining counts. Hopkins subsequently was sentenced to concurrent terms of 36 months on each PWID count, followed by five years of supervised release.

## II.    Discussion

Hopkins claims the trial court erred by failing to ascertain that he knowingly and voluntarily agreed to the concessions of guilt with respect to the PWID charges made by his attorney in opening statement.[4]  Those concessions were functionally equivalent to guilty pleas, he argues, and therefore called for a judicial inquiry similar to that conducted pursuant to Superior Court Criminal Rule 11 when a defendant tenders a guilty plea.

A division of this court initially was convinced by such an argument in its first opinion in *In re Ferguson* ("*Ferguson I*").[5]  The defendant in that case was convicted on two counts of contempt for violating a civil protective order, and in

---

[4]  Hopkins presents another claim that we may address summarily.   At the time of trial, Officer Gomez was the subject of a routine Police Department investigation due to his involvement in a police shooting.  Although the shooting and the investigation had nothing to do with Hopkins or this case, Hopkins asserts that any statements made by Gomez in connection with the investigation should have been turned over to him as *Jencks* material, and that the trial court erred in not holding a hearing to determine if any such statements existed.  The court was under no obligation to conduct such an inquiry, however, because Hopkins never established reason to believe Officer Gomez made any statements in the investigation related to the subject matter of his direct testimony in this case. *See Lazo v. United States*, 54 A.3d 1221, 1231-32 (D.C. 2012); Super. Ct. Crim. R. 26.2.

[5]  37 A.3d 890 (D.C. 2012).

*Ferguson I* this court sua sponte reversed the conviction on one of the counts "on the ground that the trial court erred in relying on a concession by defense counsel that was tantamount to a guilty plea, without assuring that appellant understood the consequences of that concession."[6] "[W]here a stipulation is tantamount to a guilty plea," the court declared, "the trial court must be careful to ensure, by analogy to [Criminal] Rule 11[,] that the defendant understands the consequences of a stipulated trial."[7] On rehearing, however, the court amended its opinion, deleting the foregoing rationale and affirming the conviction as to which defense counsel had admitted his client's guilt.[8] We were "persuaded," we explained in *Ferguson II*, "that we should not have reversed the conviction on that basis where (1) appellant did not specifically raise the issue in his brief to us or in the trial court; (2) appellee did not have a full opportunity to brief the issue; and (3) authority exists to support a contrary argument."[9]

---

[6] *Id.* at 891.

[7] *Id.* at 893 (quoting *Glenn v. United States*, 391 A.2d 772, 776 (D.C. 1978)).

[8] *In re Ferguson*, 54 A.3d 1150 (D.C. 2012) ("*Ferguson II*").

[9] *Id.* at 1153.

Thus, in the present case, this division of the court is not bound by the analysis and conclusion reached in *Ferguson I* on the issue now before us. We are free to reach, and we do reach, a different conclusion on the facts of this case: Defense counsel's concession of Hopkins's guilt of PWID was not equivalent to a guilty plea, and it did not trigger a duty on the part of the trial judge to inquire whether Hopkins knowingly and voluntarily agreed with the concession.

A criminal defendant who enters a guilty plea gives up several constitutional rights, among them the Fifth Amendment privilege against compelled self-incrimination and the Sixth Amendment rights to trial by jury and to be confronted with one's accusers.[10] As a matter of due process, the court must determine on the record that the waiver of those important rights is knowing and voluntary.[11] Criminal Rule 11 implements this constitutional requirement by specifying the inquiry of the defendant that the court must undertake before accepting a guilty plea. The colloquy outlined by this Rule is designed to ensure that the defendant is informed of his trial rights, understands the consequences of waiving them, and is

---

[10] *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).

[11] *Id.*

doing so voluntarily.[12]  As we noted in *Ferguson I,* because a trial on stipulated facts or evidence involves a similar (though not quite as far-reaching) waiver of constitutional trial rights, courts have recognized that an appropriately tailored inquiry of the defendant comparable to that set forth in Rule 11 is or may be necessary in that context too.[13]

But this concern about ensuring the validity of a waiver of constitutional trial rights does not arise when defense counsel chooses as a matter of trial strategy to concede the defendant's guilt on certain charges.  As the Supreme Court explained in *Florida v. Nixon*,[14] despite any effect such a concession may have on the defendant's chances of acquittal, such a concession is not equivalent to a guilty plea and does not waive or truncate any of the defendant's constitutional rights.  In fact, the Court noted, the defendant in *Nixon* retained all of those rights.  To wit, "[t]he State was obliged to present during the guilt phase competent, admissible

---

[12]  *See* Super. Ct. Crim. R. 11 (c), (d).

[13]  *See, e.g.*, *Glenn v. United States*, 391 A.2d 772, 776 (D.C. 1978); *United States v. Strother*, 578 F.2d 397, 404 (D.C. Cir. 1978).

[14]  543 U.S. 175 (2004) (holding that defense counsel's failure to obtain a defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance constitutionally deficient).

evidence establishing the essential elements of the crimes with which Nixon was charged."[15] Further, "the defense reserved the right to cross-examine witnesses for the prosecution and could endeavor . . . to exclude prejudicial evidence."[16] And "in the event of errors in the trial or jury instructions, a concession of guilt would not hinder the defendant's right to appeal."[17]

So too, in the present case, defense counsel's strategic concession at trial that Hopkins was guilty of unarmed PWID did not relinquish any of Hopkins's constitutional rights. In fact, Hopkins exercised his rights by pleading not guilty, going to trial, putting the government to its proof, cross-examining the government's witnesses, calling witnesses in his own defense, and choosing not to testify himself (i.e., exercising his privilege against self-incrimination). The concession likewise did not obviate the government's responsibility to prove Hopkins's guilt beyond a reasonable doubt with admissible evidence.[18] To equate

---

[15] *Id.* at 188.

[16] *Id.*

[17] *Id.*

[18] And when evidence, such as the anticipated testimony of the government chemist, was presented via a stipulation, the judge properly inquired of Hopkins to make sure he understood he did not have to stipulate and had the right to require the government introduce the evidence through the testimony of a live witness at

*(continued…)*

what happened at this trial to a plea of guilty requiring judicial inquiry as a matter of due process into the validity of a defendant's waiver of his constitutional rights is simply not accurate, for here there was no such waiver. By the same token, given that Hopkins actually exercised his constitutional rights to defend himself in a trial against the more serious charges against him, it cannot be supposed he somehow was ignorant of his rights to defend himself against the PWID charges, or unaware of the consequences of his counsel's concession with respect to those charges. The judge had no reason, in other words, to be concerned that Hopkins might not understand what his counsel was doing, or that counsel might be throwing away Hopkins's right to contest the PWID charges against his client's wishes. We therefore reject Hopkins's due process claim that the trial court erred by not ascertaining whether Hopkins knowingly and voluntarily agreed to defense counsel's concession of his guilt of unarmed PWID.

In some cases, an attorney's concession at trial of the defendant's guilt might support a claim of ineffective assistance of counsel (a Sixth Amendment claim rather than a due process claim). But that is not necessarily or even commonly so,

---

*(continued…)*
trial. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.105 cmt. at 2-8 (2013) (citing *United States v. Brown*, 428 F.2d 1100 (D.C. Cir. 1970)).

for "concession of guilt at trial by defense counsel may be a reasonable strategy in certain circumstances and therefore may not constitute deficient performance."[19] It is telling that Hopkins does not claim ineffective assistance of counsel here. Counsel's decision to concede the lesser included PWID charges (to which there was almost no plausible defense), and to concentrate on rebutting the more defensible firearm charges, was a reasonable and evidently fruitful trial strategy; denying all guilt with respect to the heroin and cocaine possession would have diminished the credibility of the defense and might only have alienated the jury. In the absence of any complaint by Hopkins or other reason to question the soundness of counsel's strategy, the judge had no duty to intervene.

We do not say it is never appropriate for a trial court to assure itself that a criminal defendant whose attorney concedes his guilt is aware of the potential ramifications of that action. If a trial court has reason to question whether a concession was made against a defendant's wishes or may otherwise signal representational problems, we think judicial inquiry is permissible and may be

---

[19] *Cade v. United States*, 898 A.2d 349, 354 n.4 (D.C. 2006); *see also Nixon*, 543 U.S. at 192 ("[C]ounsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade.'"); *Richardson v. United States*, 698 A.2d 442, 443 (D.C. 1997) (holding that concession strategy, "characterized by the trial court as 'brilliant,'" and which was "completely successful," did not constitute ineffective assistance of counsel).

desirable. But the present case did not call for judicial intervention. There was no sign of significantly deficient performance on counsel's part, and no indication that Hopkins opposed, did not understand, or was surprised by the concession his counsel made.

### III. Conclusion

We hold that defense counsel's concession of guilt in his opening statement was not equivalent to a guilty plea, and that the trial court was not required to intervene sua sponte to ascertain whether Hopkins knowingly and voluntarily agreed to it. Accordingly, we affirm Hopkins's convictions.

*So Ordered.*