*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 22-CO-0900

CALVIN J. RICHARDSON, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2004-FEL-004864)

(Hon. Wendell P. Gardner, Trial and Motions Judge)
(Hon. Andrea Hertzfeld, Motions Judge)

(Submitted December 5, 2023          Decided  July 18, 2024)

*Adrian E. Madsen* for appellant.

*Katherine M. Kelly*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, *Chrisellen R. Kolb*, and *Thomas Stutsman*, Assistant United States Attorneys, were on the brief for appellee.

Before BECKWITH, DEAHL, and SHANKER, *Associate Judges*.

DEAHL, *Associate Judge*: Calvin Richardson was caught taking a police "bait car"—an unmarked vehicle left running by police in a high crime area to attract car thieves. Richardson, who worked odd jobs at the convenience store where the police

left the car, testified that he was not trying to steal the car, but was instead driving it to the police station in the hopes of receiving a reward. The jury seemed to credit that account when it acquitted Richardson of first-degree theft. But the jury convicted Richardson of unauthorized use of a vehicle, or UUV, which (unlike theft) does not require that the defendant acted with an intent to steal.

After an unsuccessful direct appeal, Richardson sought to have his UUV conviction set aside under D.C. Code § 23-110. He argued that his trial counsel, Nathan I. Silver, was constitutionally ineffective when he failed to request that the jury be instructed on an entrapment defense to the UUV charge. Such an instruction would have allowed the jury to acquit Richardson if it found that he would not have committed UUV if the government had not induced him to do so. One Superior Court judge denied Richardson's § 23-110 motion without an evidentiary hearing. After this court remanded with instructions to hold such a hearing, a second Superior Court judge also rejected the § 23-110 claim. In that second § 23-110 ruling, the court reasoned that Richardson had not made the requisite showings of deficient performance or prejudice required for substantiating an ineffective assistance of counsel claim.

Richardson now appeals that ruling, and we reverse. Silver offered two reasons for forgoing an entrapment instruction at Richardson's trial: (1) that an

entrapment instruction was not supported by the evidence, and (2) that pressing an entrapment defense would have implicitly conceded Richardson's guilt, at least if he had not been entrapped. Neither excuse withstands scrutiny. As to Silver's first justification, this court has already explained in prior appeals in this case that there was ample evidence supporting an entrapment instruction here. *See Richardson v. United States*, Mem. Op. & J., No. 05-CF-820 at 6 (D.C. Feb. 8, 2007) ("*Richardson I*") ("We have no trouble concluding that Richardson would have been entitled to an entrapment instruction."); *Richardson v. United States*, Mem. Op. & J., No. 18-CO-889 at 5 (D.C. June 29, 2022) ("*Richardson II*") (noting the "undisputed facts in the record" supported an entrapment instruction). As to Silver's second justification, we have also previously explained that Silver in fact mounted no defense at all to the UUV offense. *Richardson I* at 5 (the defense "essentially admitted" to elements of UUV offense); *Richardson II* at 5 (the defense "had conceded all the elements of UUV"). Even if requesting an entrapment instruction might have implicitly conceded guilt on the UUV charge in the absence of entrapment, Silver in fact (unbeknownst to him) effectively conceded guilt on the UUV charge, so the entrapment instruction was all upside.

Because Silver offered no coherent explanation for forgoing a well-founded entrapment instruction, and there is a reasonable probability that a jury would not

have convicted Richardson had they received that instruction, Richardson's UUV conviction must be vacated and he is entitled to a new trial.

## I. Factual and Procedural Background

Police parked a bait car outside of a convenience store in Northeast D.C. They left the car running with its keys in the ignition as they monitored it from afar, with the aid of binoculars. The car had no identifying papers or other information in it. After the car sat idling for about thirty-five minutes, officers saw Richardson enter the car and rummage around in it before briefly going into the convenience store. Richardson then came back outside and started pacing back and forth in front of the store. Officers lost sight of Richardson for a few minutes, but he then returned to the car with a second man. The two of them got into the vehicle, with Richardson in the driver's seat, and drove away. After they drove the car about a block, the police remotely shut off the car's engine and locked its doors, leaving Richardson and his passenger as sitting ducks when the police arrived on the scene shortly thereafter and arrested Richardson.

Richardson was charged with first-degree theft, UUV, and a violation of the Bail Reform Act. He went to trial and testified in his defense. He explained that he was homeless and did odd jobs at the convenience store where police left the car. He said he was concerned when he saw the car running, so he went into the

convenience store to see if he could find the car's owner and to ask if anyone knew whose car it was. When he came up empty, he went into the car and looked through it to see if he could find the owner's identifying information, and finding none, he went back into the shop one more time to find the car's owner. After coming up empty in those efforts, Richardson decided to drive the car to the police station, hoping there might be some reward money in it for him. Before making that trek, Richardson walked to his friend Gary's house, who lived nearby, to ask if he knew where the police station was. Gary said he did and agreed to accompany Richardson and direct him to the police station.

Richardson was represented at trial by Nathan I. Silver. In Silver's closing argument, he expressly disclaimed any entrapment defense as to the most serious of the charges against Richardson—first-degree theft. Silver told the jury that entrapment is an affirmative defense that excuses otherwise guilty conduct, whereas Richardson was claiming that he was entirely innocent of the theft charge because he did not intend to steal the vehicle at all; he meant only to return it. It is less clear what defense, if any, Silver thought he was advancing on the UUV charge. Silver seemed to concede all four elements of UUV that the jury was instructed on: (1) that Richardson operated a motor vehicle, (2) for his own private use or purpose, (3) without the owner's consent, and (4) with knowledge that he did not have the owner's consent. *See* D.C. Code § 22-3215(b); *Agnew v. United States*, 813 A.2d

192, 196-97 (D.C. 2002) (listing these four elements). While only the second of those elements seemed to be even potentially contested, Silver expressly disclaimed any dispute on that front when he argued in closing that Richardson was acting in a "self-interested, self-motivated" way because he hoped "to get some money from returning the car." The jury acquitted Richardson of first-degree theft, but convicted him of UUV and the Bail Reform Act violation.

On direct appeal, we rejected Richardson's claim that the trial court erred in failing to sua sponte instruct the jury on an entrapment defense to UUV. We observed that Silver "may have overlooked the possibility of an entrapment defense with respect to the UUV charge," given that "Richardson essentially admitted" to the elements of a UUV offense. *Richardson I* at 5 & n.8 (noting that, unlike theft, "specific intent to steal is not [an] element of UUV" (citing *Arnold v. United States*, 467 A.2d 136, 139 (D.C. 1983)). We also had "no trouble concluding that Richardson would have been entitled to an entrapment instruction if he had requested one," and we assumed without deciding "that there was a reasonable probability that the omission of an entrapment instruction had a prejudicial effect." *Id.* at 6. But we concluded that it was not plain error for the trial court to omit an entrapment instruction that Richardson had not requested, in part because Silver seemed to expressly disclaim any entrapment defense in his closing. *Id.* Because we could not say, under those circumstances, that the trial court's failure to sua sponte offer an

entrapment instruction "seriously affected the fairness, integrity or public reputation" of the proceedings under plain error's fourth prong, we affirmed the conviction. *Id.* (quoting *Lindsey v. United States*, 911 A.2d 824, 837 (D.C. 2006)).

Richardson then filed a § 23-110 motion to vacate his conviction on the basis that he received constitutionally ineffective assistance of counsel. Silver submitted an affidavit defending his failure to request an entrapment instruction, explaining that "there was no evidence that the police operation" induced Richardson to drive the car and that an entrapment defense "would lack jury appeal." After taking no action on the motion for eleven years and without explanation for the delay, Judge Wendell P. Gardner denied the motion without holding an evidentiary hearing. *Richardson II* at 3-4. We reversed that ruling (with one judge noting her dissent), and explained that "the reasons Mr. Silver gave for not requesting an entrapment instruction are in significant tension with the record," again positing that "defense counsel may in fact have 'overlooked' an entrapment defense, rather than intentionally rejecting one." *Id.* at 4-6. We explained that neither of Silver's explanations for forgoing an entrapment instruction made much sense, and directed the Superior Court to hold an evidentiary hearing on the § 23-110 motion.

At the evidentiary hearing on remand, now before Judge Andrea Hertzfeld, Silver testified that "[his] chief concern" at trial was the first-degree theft charge,

because that "was the most serious charge." He testified that he made the decision not to request an entrapment instruction because "it would have implied that [Richardson] was conceding the issue of intent to commit a crime," noting that first-degree theft "requires an intent to steal." As to the UUV charge, Silver said he "thought an entrapment defense would imply that [Richardson] was conceding he had criminal intent," so he "thought the best approach was not to ask for entrapment and not to argue entrapment." Plus, consistent with the affidavit he had previously submitted, Silver opined that he "thought there was no evidence of entrapment" that might support an instruction on that defense. After Richardson's § 23-110 counsel described the facts of the case—that the bait car was left running, unlocked, with keys in it, and with no identifying information of the owner inside—Silver reiterated that he still believed "there was no evidence of [government] inducement," a prerequisite for an entrapment defense.

Silver also opined that if the jury credited Richardson's account that he was simply trying to return the car for a reward, that should have led to an acquittal on the UUV charge. The parties now seem to agree that he was wrong about that, and Richardson's § 23-110 counsel pressed Silver to defend that view in the following exchange:

Q: [Y]ou considered his testimony that he drove the car intending to return it to the police station, if credited, to make him innocent of the UUV?

A: Yes, yes.

Q: Okay. So UUV has four elements, right? Those are that the defendant operated a motor vehicle, right?

A: Yes.

Q: That he operated the motor vehicle for his own private use or purpose?

A: Yes.

Q: And that he did so without the consent of the owner?

A: Yes.

Q: And that, at the time the defendant operated the vehicle, he knew that he did so without the consent of the owner?

A: Right.

. . .

Q: [C]onsistent with Mr. Richardson's testimony, you argued in your closing argument that Mr. Richardson drove the car, right?

A: Yes.

Q: With the purpose of returning it, right?

A: Yes

Q: In the hopes of a reward?

A: Yes.

At the conclusion of the evidentiary hearing, Judge Hertzfeld found that Silver made a "strategic decision" not to request an entrapment instruction that "was within the [bounds] of reasonable, professional assistance." She concluded that Silver did not render constitutionally deficient assistance of counsel. Judge Hertzfeld also opined that Richardson was not prejudiced by any deficiency in any event, though she offered no explanation for how she came to that conclusion.[1] Judge Hertzfeld therefore denied Richardson's motion to vacate his conviction, and Richardson now appeals.

## II. Analysis

The Sixth Amendment guarantees the right to effective assistance of counsel. U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). In *Strickland*, the Supreme Court explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686.

---

[1] Judge Hertzfeld initially ruled only on the deficiency prong. Richardson's counsel urged her to address the prejudice prong as well, prompting Judge Hertzfeld's unexplained addendum that there was no prejudice in any event.

An ineffective assistance of counsel claim has two prongs. The first is the deficiency prong, which requires the defendant to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Counsel's performance is deficient if it "fell below an objective standard of reasonableness." *Id.* at 688. The second is the prejudice prong, under which "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Both prongs of an ineffective assistance claim are mixed questions of law and fact." *Dugger v. United States*, 295 A.3d 1102, 1111 (D.C. 2023).

## A. Deficiency

Silver's performance was deficient because there was no coherent reason for him to forgo an entrapment instruction that had ample support in the evidence, when Silver in fact mounted no defense at all to the UUV charge. While we do not second-guess Judge Hertzfeld's credibility finding that Silver made a strategic choice to forgo an entrapment defense, that decision was beyond the wide bounds of what might be considered reasonable trial strategy. Recall that Silver offered two explanations for forgoing an entrapment instruction: (1) that the evidence did not support such an instruction, and (2) that pursuing an entrapment defense would have

required Richardson to at least implicitly concede that he was guilty. On appeal, the government offers a third justification for Silver's failure to request an entrapment instruction: that Silver essentially ignored the UUV charge as part of a strategy to defeat the more serious theft charge. These justifications do not withstand scrutiny.

*1. The evidence readily supported an entrapment instruction*

Silver's first explanation for forgoing an entrapment instruction was his mistaken belief that the evidence did not support it. We have already twice rejected that view in the prior appeals in this case, explaining that the evidence at trial provided ready support for an entrapment defense. *Richardson I* at 6; *Richardson II* at 5-6. Not only did we hold that an entrapment instruction would have been warranted on this record, but we opined that it was not a particularly close call, explaining that we had "*no trouble* concluding that Richardson would have been entitled to an entrapment instruction." *Richardson I* at 6 (emphasis added). We further detailed that the "undisputed facts in the record"—including "that the police left the car (1) devoid of any papers identifying an owner, and (2) running for over thirty-five minutes"—plainly supported an entrapment defense. *Richardson II* at 5-6. That is not to say that Richardson was in fact entrapped, or to suggest that a jury instructed on entrapment would most naturally have acquitted Richardson of UUV. It is only to reiterate what we have already twice held: there was more than

enough evidence to support an entrapment instruction, and entrapment was a viable defense to the UUV charge.

Silver's "strategic" decision to forgo an entrapment instruction on this basis was grounded in an unreasonable mistake of law that Richardson was not entitled to such an instruction. "[A]n attorney's ignorance of a point of law that is fundamental to his case," at least when it is unreasonable, "is a quintessential example of unreasonable performance under *Strickland*." *Dorsey v. United States*, 225 A.3d 724, 730 n.4 (D.C. 2020) (quoting *Hinton v. Alabama*, 571 U.S. 263, 274 (2014)).

The government counters that Silver in fact understood Richardson would have been entitled to an entrapment instruction, and merely concluded that "it would have been a weak defense" that "could have undermined his effort to portray his client as a Good Samaritan." In the government's view, Silver was therefore making a valid strategic decision which we should not now second guess. *See Kigozi v. United States*, 55 A.3d 643, 652 (D.C. 2012) ("[W]e will not second-guess true tactical decisions."). But suggesting that Silver understood he would have been entitled to an entrapment instruction is at odds with his repeated insistence that "there was no evidence of entrapment," "there was no evidence of inducement," and that "there was no basis in the evidence for requesting an entrapment instruction." So

contrary to the government's reading of the record, Silver's tactics were infected by this legal mistake, and thus did not reflect a true strategic choice.

But even if we understood Silver to have deliberately forgone an entrapment defense that he knew Richardson was entitled to, that choice made no sense as a defense strategy, even accounting for "the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. We now elaborate on that point.

### 2. An entrapment instruction would not have required an admission of guilt, and in any event, Richardson had already admitted to UUV's elements

Silver's other explanation for forgoing an entrapment defense was that it would have required him to effectively concede guilt, at least if the jury did not buy the entrapment defense. Because this line of thinking is independent of his legal mistake that the evidence would not support an entrapment instruction, the government stresses that it is a standalone basis for concluding that Silver's performance was not deficient. The problem with this alternative justification for forgoing an entrapment defense is simple: Silver had already in fact conceded all of the elements of a UUV offense, so there was no downside to requesting an entrapment instruction.

Recall that the jury in Richardson's case was instructed that Richardson was guilty of UUV if the government had proven the following elements: (1) that Richardson operated a motor vehicle, (2) for his own private use or purpose, (3) without the owner's consent, and (4) with knowledge that he did not have the owner's consent. *See* D.C. Code § 22-3215(b); *Agnew*, 813 A.2d at 196-97. There was no conceivable dispute on the first, third, or fourth elements of that offense. While Silver might have argued that Richardson's altruistic motive (if his testimony were credited) might obviate the second element, Silver instead expressly disclaimed any such argument before the jury. In his closing argument, Silver stressed that when Richardson took the car, "it wasn't altruistic, it was self-interested, self-motivated," because "he was doing it to get some money he hoped from returning the car." Thus, as this court has already twice observed, Silver conceded the elements of a UUV offense without mounting any defense to it. *Richardson I* at 5; *Richardson II* at 5. So Silver's explanation that requesting an entrapment instruction risked conceding Richardson's guilt is incoherent—Silver had already done the very thing (conceding guilt) he was worried about, but without the benefit of an entrapment instruction. An incoherent strategy cannot be a reasonable one.

Perhaps Silver could have reasonably believed that entrapment was a weak defense on these facts (as the government stresses), but it was still inarguably better than *no defense at all*, which is precisely what Silver mounted against the UUV

charge. As we have twice previously noted, Richardson had "essentially admitted" to UUV, *Richardson I* at 5, and "had conceded all the elements of UUV," *Richardson II* at 5, in his testimony. So it is not as if an entrapment defense could have undermined some other defense to the UUV charge—Silver presented none.

The fact that the entrapment defense would not have been in tension with any other defense Silver presented distinguishes this case from those like *Jones v. United States*, which the government relies upon heavily. 512 A.2d 253 (D.C. 1986). In *Jones,* we refused to second-guess defense counsel's decision to forgo an entrapment defense to a robbery charge that would have been in tension with the principal defense that the defendant lacked the requisite intent to steal necessary to constitute a robbery. *Id.* at 255. *Jones* involved a defendant who took a radio from an undercover officer who was pretending to be asleep. *Id.* In that case, we held that it was reasonable for defense counsel not to present an entrapment defense precisely because defense counsel *offered a different theory* "consistent with innocence," to wit, "that Jones did not possess the necessary intent to commit robbery because . . . he had no intention of stealing [the radio] when he picked it up." *Id.* at 262. But unlike the robbery offense at issue in *Jones* (or the first-degree theft charge at issue in this case), UUV does not require an intent to steal, so the result of Silver's decision to forgo an entrapment defense was to mount no defense whatsoever to that charge.

We are mindful that defense counsel does not need to advance every defense that the evidence supports, that they may forgo potential defenses that would undermine stronger defenses, and that it is sometimes reasonable to fold on lesser charges to better defend against more serious ones. But Silver's decision to forgo a viable entrapment defense on the UUV charge equated to mounting no defense whatsoever to that charge, for no conceivable benefit to the overall defense strategy. That is beyond the bounds of what could be considered a reasonable strategic judgment, as there was no strategic downside to asking that the jury be instructed on an entrapment defense on the UUV charge. *See generally* John M. Burkoff & Nancy M. Burkoff, Ineffective Assistance of Counsel (2024 ed.) § 7.2 nn.2-19 and accompanying text (citing cases where defense counsel was found deficient after simply failing to present an available defense that did not conflict with broader trial strategy). Silver had no strategy beyond surrender on the UUV charge, and that is not reasonable when the evidence supported a viable defense to that charge.

### 3. *Forgoing an entrapment instruction cannot be justified on the grounds that it improved Richardson's odds of beating the theft charge*

The government offers one more potential justification for Silver forgoing an entrapment instruction that we have already touched upon: that an entrapment defense would have undermined his defense to the more serious theft charge. First-degree theft carries a potential sentence of ten years' imprisonment, D.C. Code

§§ 22-3211, -3212(a), whereas UUV carries a potential sentence of five years' imprisonment, D.C. Code § 22-3215(d)(1).

There is no question that defense counsel might quite reasonably concede guilt on some lesser offenses in order to mount the strongest possible challenge to more serious offenses. *See Hopkins v. United States*, 84 A.3d 62, 67 (D.C. 2014) ("[C]oncession of guilt at trial by defense counsel may be a reasonable strategy in certain circumstances and therefore may not constitute deficient performance." (quoting *Cade v. United States*, 898 A.2d 349, 354 n.4 (D.C. 2006))); *(Marcus) Richardson v. United States*, 698 A.2d 442, 443, 445 (D.C. 1997) (finding that counsel's strategy of "admitting the acts of destruction of property in order to enhance his client's credibility in denying commission of the more serious offenses" was "completely successful," while noting that counsel did not concede guilt as to mental state, but only the illegal acts themselves); *Cade*, 898 A.2d at 354-55 (affirming denial of § 23-110 motion where defendant was aware of strategy of conceding guilt to non-homicide charges to defend against homicide charges).[2]

---

[2] Defense counsel should generally obtain their client's consent if they intend to mount no defense to a charge, because where the defense strategy "is tantamount to a guilty plea," counsel "must be careful to ensure . . . that the defendant understands the consequences" of that strategy. *Glenn v. United States*, 391 A.2d 772, 776 (D.C. 1978); *(Marcus) Richardson,* 698 A.2d at 445 ("Richardson acquiesced in counsel's general approach."); *Cade*, 898 A.2d at 355 (defendant "was clearly aware of this strategy" and "participated in this strategy by testifying and

But Silver plainly did not make a tactical decision to concede guilt on the UUV offense as part of a strategy to combat the theft charge, because he never evinced any understanding that he had in fact conceded guilt on that charge. Silver's testimony at the § 23-110 hearing was that he believed that Richardson's testimony, if credited, made "him innocent of UUV." It is not at all clear what made him think that, and he could not explain his rationale when pressed. Richardson's § 23-110 counsel walked Silver through the elements of UUV, then through Richardson's own testimony and Silver's closing arguments; Silver effectively conceded that he admitted to every element of UUV, though he betrayed no awareness that his admissions amounted to offering no defense to that charge at all. We are thus left with the firm impression that Silver's decision to forgo an entrapment defense was not based on any reasoned strategy, but was instead grounded in Silver's basic misimpression that he had mounted some alternative defense to the UUV charge, when in fact he had not done so.

That means that this was not a "true tactical decision," but a decision grounded in a fundamental mistake of law. *Kigozi*, 55 A.3d at 652; *see also Hinton*, 571 U.S.

---

admitting" to the lesser charges); *Hopkins*, 84 A.3d at 63, 67 (the judge verified before trial that defendant understood counsel was conceding to lesser charges, and defendant did not object when counsel later did so). There is no indication that Silver informed Richardson that he would effectively concede the five-year felony UUV offense, and there is a very clear indication to the contrary: Silver seemed entirely unaware that he had in fact conceded the elements of the UUV offense.

at 274 (defense counsel's ignorance of law fundamental to the case constitutes deficient performance). This is therefore exactly the kind of situation where "an attorney's concession at trial of the defendant's guilt" will "support a claim of ineffective assistance of counsel." *Hopkins*, 84 A.3d at 67. That will invariably be the case where, as here, defense counsel inadvertently concedes guilt despite a perfectly viable defense with considerable support in the evidence. *Cf. Fatumabahirtu v. United States*, 148 A.3d 260, 261 (D.C. 2016) (deficient performance where trial counsel failed to investigate an available defense); *(Christie) Jones v. United States*, 262 A.3d 1114, 1124-25 (D.C. 2021) (deficient performance where trial counsel failed to call expert witness to testify to unreliability of eyewitness identification evidence); *Frederick v. United States*, 741 A.2d 427, 437-39 (D.C. 1999) (deficient performance where trial counsel failed to call an eyewitness known to have exculpatory testimony).

Interposing an entrapment defense to the UUV charge would not have been in any tension with Richardson's defense to the theft charge in any event. Richardson's purported intent to turn the car in at a police station (if credited) obviated the requisite intent for a theft charge, and that defense was entirely simpatico with an entrapment defense on the UUV charge. So even if the government were correct that Silver made a strategic decision to concede the UUV charge to bolster the theft

defense, that strategy likewise would not have made any sense because bypassing an entrapment defense had no tendency to strengthen the defense to the theft charge.

Silver evinced no understanding that he could consistently advance a lack-of-intent defense to the theft charge while at the same time raising the complementary defense of entrapment only as to the UUV charge. We do not see any arguable tension in those defenses, nor do we discern any conceivable strategic justification for Silver forgoing an entrapment instruction on the UUV charge.

## B. Prejudice

Having determined that Silver's performance was deficient, we now consider whether that deficient performance prejudiced Richardson. In conducting this inquiry, we ask whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cosio v. United States*, 927 A.2d 1106, 1125 (D.C. 2007) (en banc) (quoting *Strickland*, 466 U.S. at 695). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 1132 (quoting *Strickland*, 466 U.S. at 694). Judge Hertzfeld found a lack of prejudice in this case, albeit without explanation, and the government now defends that ruling.

We conclude that Richardson was prejudiced by Silver's deficiencies. An entrapment instruction would have told jurors that if they determined there was evidence that the government "induced [Richardson] to commit the [UUV] charged," then jurors had to "decide if the government ha[d] satisfied its burden to prove beyond a reasonable doubt that [the defendant] was ready and willing before the inducement to commit the crime." Criminal Jury Instructions for the District of Columbia No. 9.310 (5th ed. 2018). There was plainly evidence of government inducement here—as we have previously detailed in our prior decisions in this matter—so that if the jury had been instructed on entrapment it likely would have had to confront whether the government had proven beyond a reasonable doubt that Richardson had a "predisposition to commit the crime." *Daniels v. United States*, 33 A.3d 324, 328 (D.C. 2011) ("[T]he principal element in the defense of entrapment [i]s the defendant's predisposition to commit the crime," which "focuses on whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." (first quoting *United States v. Russell*, 411 U.S. 423, 433 (1973), then quoting *Minor v. United States*, 623 A.2d 1182, 1188 (D.C. 1993))). We are not at all confident that jurors would have convicted Richardson of UUV had they been confronted with that question.

First, recall that jurors acquitted Richardson of theft, indicating that they generally credited his testimony and found he did not have the intent to steal the car. As we suggested in Richardson's direct appeal, "[b]ecause the jury acquitted Richardson of theft," that provides some reason to think "there was a reasonable probability that the omission of an entrapment instruction had a prejudicial effect." *Richardson I* at 6.

Second, Richardson also presented strong evidence that the jurors in his case in fact did not believe he was predisposed to committing the charged crimes. Shortly after Richardson was convicted, a local paper ran an article reporting on the District's practice of using bait cars, and it specifically highlighted Richardson's case after interviewing some of his jurors.[3]  *See* Jason Cherkis, *Stalled Out*, Washington City Paper (April 22, 2005), washingtoncitypaper.com/article/245080/stalled-out/; https://perma.cc/KEZ2-XJKP (last visited July 8, 2024).  That article quoted one of Richardson's jurors as saying, "We felt sorry for [Richardson].  We didn't see him as a car thief." *Id.*  Another juror opined that the jurors thought "the police department should not be in the business of *inviting people to commit a crime*." *Id.* (emphasis added).  And even the police lieutenant who spearheaded the bait-car program remarked, "I could see by the verdict [in Richardson's case] that

---

[3] The government did not object to Richardson introducing this evidence at his § 23-110 hearing.

some of the people may have had an issue with entrapment," though he further offered his view that the case was "nowhere near entrapment."

The government counters that Richardson had a prior robbery conviction from 1997, but that eight-year-old conviction (at the time of Richardson's trial) is hardly dispositive evidence that Richardson was predisposed to steal a car. That conviction was introduced as impeachment against Richardson when he testified, and yet jurors still acquitted him of first-degree theft. To be sure, if Richardson had presented an entrapment defense the government could have introduced this past conviction not only as impeachment but as substantive evidence of Richardson's predisposition to commit the charged crime. But that is a pretty thin distinction. The impeachment force of that past conviction—tending to undermine Richardson's testimony that he did not intend to steal the car—seems quite similar to its force had it been admitted as substantive evidence showing his predisposition toward UUV and theft. At bottom, if jurors had a viable route to acquit Richardson on the UUV count, which an entrapment instruction would have provided them, we cannot say with any confidence that jurors would not have availed themselves of that option.

### III. Conclusion

We reverse the trial court's denial of Richardson's § 23-110 motion and remand with instructions for the trial court to vacate that conviction.

*So ordered.*